In the Matter of the Petition of Pasquale Gulla', for Election of Directors of ITALIAN STAR LINE, INCORPORATED, a corportation of the State of Delaware.

### *New Castle, Aug. 23, 1921.*

On a stockholder's petition to compel a corporation to elect directors and a report thereunder by a master appointed to hold such election, the sole question, on objections to confirming the report, was whether or not such election was validly had, and the court would not consider the fitness of the candidates or attempt to determine the relative merits of contending factions for control.

A master appointed to hold a meeting pursuant to a stockholder's petition to compel corporation to elect directors might at such meeting determine the question as to whether a quorum was present by the number of votes cast; there being nothing in the by-laws or the statute to the contrary.

Where master was appointed to hold a meeting in pursuance of a stockholder's petition to compel the corporation to elect directors, and at such meeting some two hundred and fifty of those present left because of riot and disorder, it was error for the master in determining whether a quorum was present at the beginning to compute such two hundred and fifty persons as holding twenty-five hundred shares or more, because the stock issued averaged eleven shares per stockholder in the corporation, such method being mere speculation.

A master appointed to hold a stockholders' meeting to compel election of directors pursuant to a petition by a stockholder, is not warranted in deciding that a quorum was present when, in order to count such quorum, it was necessary to count as present thirty-five hundred shares for which no proxies were filed, the only evidence of their presence being that certain persons were present and then left the meeting who on the day before had asserted they represented that many shares and displayed what they claimed were proxies for that number.

If the president of a corporation, for which a master was appointed to hold a meeting on stockholder's petition to compel election of officers, assulted the master appointed, he was guilty of contempt of the court.

PETITION FOR AN ORDER FOR AN ELECTION OF DIRECTORS of a corporation by Pasquale Gulla' a stockholder of Italian Star Line, Inc. An order was entered appointing a master to hold a meeting of stockholders of the corporation for the purpose of electing directors. The master reported to the court his proceedings and recommendations respecting the result of the stockholders' meeting, to which exceptions were filed on behalf of other

stockholders of the corporation, and the cause was heard on the master's report and exceptions thereto. Order declaring no election and refusing to confirm report, without prejudice.

*Caleb E. Burchenal* and *Aaron Finger*, for the exceptants.

*Wilbur L. Adams*, for the petitioner.

THE CHANCELLOR. The petition in this case was presented under *Section* 31 of the General Corporation Law of this state (*Revised Code* 1915, § 1945), which reads as follows:

"*Section* 31. *Election of Directors on Failure to Elect on Regular Day; Election Ordered by Chancellor; When.*—If the election for directors of any corporation shall not be held on the day designated by the by-laws, the directors shall cause the election to be held as soon thereafter as conveniently may be; no failure to elect directors at the designated time shall work any forfeiture or dissolution of the corporation, but the Chancellor may summarily order an election to be held upon the application of any stockholder, and may punish the directors for contempt of court for failure to obey the order."

The petition was filed on the fifteenth day of June last. It alleged that the petitioner is a stockholder in said corporation; that under the by-laws of the corporation the time for the holding of the annual stockholders' meeting for the purpose of electing the eleven directors of the corporation was on the first Monday of February, A. D. 1921; and that the officers and directors had failed, omitted and neglected to call and hold said annual meeting.

Because of special circumstances which the petition set forth, the Chancellor summarily ordered an election of directors to be held, and appointed a master in the first instance to hold and conduct the election. It was later objected that this course was unwarranted, that the court should first attempt to hold the election through the incumbent directors and should resort to the employment of a master only after the directors had failed to act in obedience to the court's order. This objection was disposed of, and is reported *ante p.* 1.

The master proceeded to act under the authority of the Chancellor to conduct the election. The order, in that part thereof which is at all material to the present phase of the controversy, directed the master, as follows:

"It is, therefore, ordered by the Chancellor that Victor Barsky, Esquire, of the city of Wilmington, State of Delaware, be and he is hereby appointed master to hold said election in accordance with the by-laws of said corporation, as set forth in the exhibit attached to said petition, at a time and place to be fixed by said master.     *   *   *

"And further, that no shares of stock of said corporation transferred on the books of the corporation within twenty days prior to said election shall be voted thereat.

"And further, that said master shall be the judge of the qualifications of stockholders to vote at said election; and he may employ such assistants as he may deem necessary, and fix the compensation, if any, to be paid to them for their services, which shall be included as part of the costs of this proceeding.   *   *   *

"And further, that at 10 o'clock a. m. on the third day after the holding of said election the said master shall make report of his proceedings hereunder to the Chancellor, at his Chambers, in the County Courthouse, in the City of Wilmington, Delaware, setting forth the names of the stockholders of said corporation, the number of shares held by each of them and the names of those who voted and the number of shares of stock voted by each of them at said election, with all proxies and powers of attorney used at said election; and also declare the result of said election."

The by-laws of the corporation which govern the holding of the annual meeting provide, as follows:

"5.   Stockholders may vote at all meetings either in person or by proxy in writing.

"6.   A majority in amount of the stock issued and outstanding represented by the holder in person or by proxy shall be requisite at every meeting to constitute a quorum for the election of directors or for the transaction of other business.   *   *   *

"9.   The annual meeting of stockholders after the year 1919 shall be held on the first Monday of February in each year, at the general office of the company in the city of New York, at 3 o'clock p. m. when they shall elect by a plurality vote, by ballot, a board of eleven directors, to serve for one year and until their successors are elected or chosen and qualify, each stockholder being entitled to one vote, in person or by proxy, for each share of stock standing registered in his or her name on the twentieth day preceding the election, exclusive of the day of such election.

"12.   All proxies shall be filed with the secretary of the meeting before being voted upon."

The master now makes return of his proceedings under the order appointing him, and the question is on the confirmation of his return.

It appears that the election was attempted to be held in New York City, on July 23 last. No question is made concerning the compliance by the master with all the requirements of the by-laws touching things to be done as preliminary to the holding of the meeting. At the argument many matters were discussed at length, to which I shall not advert, for I do not deem them relevant to the real point at issue, which is whether there has been a lawful election of directors by the stockholders at the meeting held by the master.

The relative merits of the contending factions within this corporation who are manifestly struggling with each other for its control can be of no value in determining the question of whether there has been an election by the stockholders. Certainly this is not the sort of proceeding in which it is proper to consider the manner in which the internal affairs of this corporation have been managed. The sole question is whether or not the stockholders at the meeting did duly choose eleven directors in the manner provided by the law of the State and the by-laws of the corporation. The fitness or unfitness of individuals to become directors of the corporation was a matter for the stockholders to pass upon at the meeting, and it would be highly improper, in this proceeding, for the court to pay any heed whatever to charges and countercharges concerning the fitness of either one group or the other of the two factions.

I, therefore, come to a consideration of the narrow question of whether there was a lawful election by the stockholders of eleven directors, as required by the by-laws.

The master reports that there was such lawful election, recommending that the Chancellor—

"decree that a legal meeting was held, and that at the election a plurality of votes was cast for the Gulla' ticket (the report in another part names the individuals composing this ticket), thereby electing a new board of directors which would hold office until the next annual meeting of the stockholders in February, 1922."

Exceptions have been filed to the report of the master by sundry stockholders of the corporation. These exceptions are not set out, for it is more convenient, as well as more economical of

space to dispose of the matter by reference to the controlling facts and the Chancellor's judgment thereon.

Under the by-laws:

"A majority in amount of the stock issued and outstanding represented in person or by proxy shall be requisite at every meeting to constitute a quorum for the election of directors or for the transaction of other business."

It is further provided that—

"All proxies shall be filed with the secretary of the meeting before being voted upon."

A plurality vote is all that is required to constitute an election.

These are the provisions of the law of this corporation by which the meeting and its legality are to be tested. There must first of all be a quorum present. Unless there be such quorum, the meeting has no power to elect. The master reports that there was a quorum present; the exceptants contend that the master's report discloses the contrary to be the fact.

It appears from the report that when the meeting assembled, there was no attempt to count the shares present either in person or by proxy for the purpose of ascertaining the presence of a quorum. The master deemed it a better course, in view of the large number of stockholders, to not count a quorum at the outset, but to proceed with the voting and let the vote disclose whether or not there was such quorum present. There is nothing in the by-laws, or in the statute, prohibiting such a course. I can see no objection to that method of procedure if the master in charge of the meeting under the circumstances saw fit to adopt it.

Having thus determined to seek for a disclosure of the quorum upon the taking of the vote, the balloting proceeded, and it appears from the report that 16,839 shares voted either in person or by proxy. The total number of shares issued and outstanding is 38,291. A majority of this number, necessary to count a quorum is 19,146. It thus appears that the actual vote disclosed that a quorum was not present at the time of the voting.

But the master reports that certain other shares ought to be counted as present for the purpose of making the quorum. These shares may be classified in groups. I shall not detail them. Whatever may be determined with respect to the smaller groups

of shares it is necessary to count one or the other of the two large groups numbering twenty-five hundred and thirty-five hundred respectively. If it be proper to count either of these blocks of stock, then a quorum was present, at least at one stage of the meeting. But it is admitted by both sides that these two blocks of stock were not present at the time of voting. If they were present at all it was in the early stages of the meeting. The master reports that, owing to certain disorder holders of stock or of proxies were frightened away, and that these two blocks of stock thus departed from the meeting. He takes the view that if stock is present at any stage of the meeting it is to be counted as present for the purposes of a quorum even though it had withdrawn before action was taken. It is unnecessary for me to pass upon this contention, for the reason that I entertain the view that neither the twenty-five hundred block nor the thirty-five hundred block can be held to have been present at any time during the meeting.

With respect to the twenty-five hundred shares, the master reports in substance, as follows: In the early stage of the meeting, before the balloting had commenced, disorder was created amounting to a riot, which the master thinks was deliberately provoked; that about two hundred and fifty persons left the hall; that the average number of shares held by the thirty-four hundred and sixty-eight stockholders is about eleven to the person; that assuming the two-hundred and fifty persons who left held, or represented proxies for, the average of only ten shares to the person, there were thus twenty-five hundred shares present at the meeting which left before the balloting commenced.

This is pure speculation. Who these individuals were is not disclosed. Had the quorum been called at the outset, before these alleged stockholders left, there would then have been no doubt concerning the identity and stockholdings of these persons. This, however, was not done. The master relied on the ballot as the evidential means of diclosing the quorum. When the ballot was taken, the supposed twenty-five hundred shares were not there. The inspectors of election, whose duty it was under the by-laws to certify the returns, do not appear to have counted these twenty-five hundred votes.

It was suggested at the hearing that the master's report could

be amended so as to include an inspector's certificate which would count these votes. If it were proper to count votes in this manner, I would permit an amended report to be filed. But it is so manifestly improper to count this block of twenty-five hundred shares as present, that an inspectors' certificate which allowed them as present would be without value. Besides, how could inspectors count any shares as present other than those which were deposited in the ballot box? Inspectors have nothing to do with counting for a quorum, or dealing with anything in their official capacity, other than the ballots deposited in the box, which it is their duty to count and tally, and therefrom to certify their returns.

In order that these shares might be counted as present at the opening of the meeting, the court would be required to presume first that the persons who departed did actually represent them either in person or by proxy; that these shares had not been transferred on the books of the corporation within twenty days next preceding the election (as is forbidden by *Section* 29 of the *General Corporation Law*); that if there were proxies in the block, as presumably there were, such proxies were in due form; that the number of shares represented was the presumptive number of ten per person. These presumptions may not be too violent for parties to indulge in; but they are certainly too violent to be seriously entertained by a court. The twenty-five hundred shares cannot be counted as present at any time. ·

Now, with respect to the thirty-five hundred shares. As to these, the master refers to an affidavit of Pasquale Gulla', attached to the report. "This affidavit," says the master, "shows clearly that at least thirty-five hundred other shares were present which would make 23,049 shares present in person or by proxy." In making up this total, certain shares of which I have made no mention were taken into calculation. These other shares, as before indicated, are without significance in reaching a conclusion for they may be counted as present, or disregarded without affecting the situation. ·

The affidavit of Gulla' states that on July 25, two days after the meeting, he saw a letter written by one P. Cardile, dated July 19, in which Cardile stated that he was sure that he and others working with him would bring to the meeting $20,000 worth

of stock, which would mean two thousand shares. Gulla' further deposes that on the day before the meeting he saw Cardile and others at the office of the master "and that this delegation showed deponent in the presence of Mr. Bartocci, Mr. Napolis, the master's attorney, Mr. Gentili and others who were present at that time that they had over $35,000 in proxies (which would mean thirty-five hundred shares) which they were going to vote at the meeting the day after. That at the meeting they were all present but that as soon as the arguments, fights, assaults shrieks and riots started, they left the meeting together with many others who had come from as far away as Pittsburgh, Pa."

On the strength of this statement by Gulla' the master reports that the thirty-five hundred shares which Cardile claimed to control on the day before the meeting ought to be counted as present when the meeting convened. To so count them would be thoroughly unwarranted. It is to be noted that Gulla' does not claim to have seen and gone over the proxies. Whether these alleged proxies were properly executed by bona fide stockholders, no one knows. Shares of stock, to be counted as present, must be on hand either in person or by proxy. If present as proxies, they must be filed with the secretary of the meeting. That some one claimed on a day prior to the meeting that he would have certain proxies at the meeting, and that such person was bodily present at the meeting but departed therefrom before the business for which he was there was attended to, without even depositing his proxies, makes too weak a presentation to permit of serious consideration as a justification for counting as present the shares he is supposed to have represented. The thirty-five hundred shares cannot be counted for the purpose of making the quorum.

After thus eliminating the two blocks of twenty-five hundred and thirty-five hundred shares respectively, a quorum was not present, and there was no lawful election of directors.

Insofar, therefore, as the master's report recommends that a decree issue to the effect that a legal meeting was held, and that directors were elected thereat, the same is not confirmed by the court. The order will be to the effect that there was no election, but this will be without prejudice to the petitioner in case he desires to ask that the master be directed to make another at-

tempt to hold a meeting of the stockholders for the purpose of electing directors.

Before proceeding to dispose of the matter of costs as reported by the master, it is proper for me to say, with respect to the alleged disorder and riot at the meeting in which it is charged that Yasselli, the president of the corporation, assaulted the master, that these charges were denied at the hearing on the exceptions. If such assault and interference with the court's master did take place, then Yasselli was in contempt of this court, and upon proper showing would have been so adjudged and accordingly punished. At the hearing, I indicated that I would issue an attachment for Yasselli if application therefor were made, and would take testimony upon the question of the truth of said charges with the view of punishing Yasselli if a case should be made out against him. No attachment was asked, however, and so the matter rested. It should be further added that Yasselli was present at the hearing and within reach of the suggested process.

As to the costs or expenses, which the master reports he was put to in carrying out the order of the court, I am not prepared to dispose of them at this time. The master will appear before the Chancellor for the purpose of making final revision of his bill of expenses.

Let an order be prepared in accordance with this opinion.