**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 18, 2022
Date Decided: February 23, 2022

A. Thompson Bayliss, Esquire
Michael A. Barlow, Esquire
Eliezer Y. Feinstein, Esquire
Samuel D. Cordle, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Raymond J. DiCamillo, Esquire
Kevin M. Gallagher, Esquire
Daniel E. Kaprow, Esquire
Caroline M. McDonough, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

Peter J. Walsh, Jr., Esquire
Matthew F. Davis, Esquire
Patrick A. Lockwood, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
Wilmington, Delaware 19801

RE:   *In re Aerojet Rocketdyne Holdings, Inc.*,
       C.A. No. 2022-0127-LWW

Dear Counsel:

I write regarding the parties' competing forms of order and related submissions in connection with the plaintiffs' Motion for Temporary Restraining Order (the "Motion").[1]

As the parties are aware, I granted the Motion on February 15, 2022.[2]  In brief, I concluded that the plaintiffs had satisfied the standard for a temporary

---

[1] Dkt. 3.

restraining order and ordered that nominal party Aerojet Rocketdyne Holdings, Inc. (the "Company") remain neutral in the ongoing dispute about the nomination of a Company-backed slate of directors for an upcoming election.

The Company's eight-member board of directors (the "Board") is evenly divided on that issue. One faction of the Board includes the Company's Chief Executive Officer, Eileen Drake. The other faction includes Warren Lichtenstein, the Company's executive chair and founder of Steel Partners Holdings L.P. ("Steel"), a significant stockholder of the Company.

On January 28, 2022, Steel delivered a letter to the Company nominating a slate of seven director candidates for election, including four incumbent Board members. Ms. Drake and the other three defendants (none of whom were nominated by Steel) issued a press release—purportedly on behalf of the Company—that questioned Mr. Lichtenstein's decision to launch a proxy contest.[3]

---

[2] Dkt. 33.

[3] The press release stated that "the Company believes that Mr. Lichtenstein's decision to cause [Steel] to launch a disruptive proxy contest at this time may ultimately be driven by his personal concerns and desire to secure his board position" and that "the Company is disappointed that, at this critical time for the Company, Mr. Lichtenstein has decided to take these actions to launch a proxy fight." Verified Compl. for Declaratory J. ("Compl.") ¶¶ 32-33 (Dkt. 1).

These defendants also brought litigation—naming the Company as both a plaintiff and a nominal defendant—seeking to, among other things, disqualify Steel's slate.[4]

As I explained in my oral ruling on the Motion, the plaintiffs stated a colorable claim that neither faction of the Board presently has the authority to unilaterally act on the Company's behalf or use its resources in the context of the upcoming director election.[5] I emphasized that my ruling was intended to maintain the Company's neutrality regarding the contested director election. I provided specific guidance to the parties on the form of order that I would be willing to enter. For example, I directed that the form of order should prevent persons or entities purporting to act on behalf of the Company from issuing public statements in the Company's name or using Company resources in support of the election efforts of any candidate for election at the Company's annual meeting, absent Board approval.[6] I requested that the parties submit an implementing order. They were unable to agree and competing proposed orders were filed.

The form of order proposed by the plaintiffs is appropriately tailored to the court's guidance.[7] It temporarily prevents the use of the Company's name or

---

[4] *See* C.A. No. 2022-1046-LWW.

[5] *See* Mot. for Temporary Restraining Order Hr'g Tr. Feb. 15, 2022 (Dkt. 38).

[6] *See id.* at 66-85.

[7] *See* Dkt. 34.

resources to support one slate over another without the approval of the Board while ensuring that no individual is restrained from speaking on his or her own behalf. That proposed order also memorializes the plaintiffs' offer to waive the Company's advance notice bylaw deadline, allowing the defendants to run their own slate if they choose.[8] The plaintiffs' order further provides that the Company will be represented in the related lawsuits by independent counsel approved by a majority of the Board. These additions advance the court's goal of ensuring corporate neutrality.[9]

The defendants' proposed form of order, on the other hand, includes provisions that are far afield from matters raised at the hearing on the Motion. To start, it would require the Company to establish a $20 million "common fund" to

---

[8] The parties have agreed on the extension of the nomination deadline. They disagree on whether the order should exempt the defendants from the requirements of the advance notice bylaw entirely, as the defendants' proposal contemplates. The Board has not granted any such exemption and I decline to determine on the limited record before me whether certain of the bylaws' requirements are inequitable. *See* Defs.' Letter Regarding Competing Forms of Order ("Defs.' Letter") at 5 (Dkt. 35).

[9] *See Pearl City Elevator, Inc. v. Gieseke*, C.A. No. 2020-0419-JRS, at 93 (Del. Ch. Sept. 11, 2020 (TRANSCRIPT) ("The company or entity is the neutral res in the proceeding. Its interest is and should be that the entity be managed by those who are authorized to serve in that role."); *In re Howard Midstream Energy P'rs, LLC*, C.A. No. 2021-0487-LWW, at 68 (Del. Ch. July 22, 2021) (TRANSCRIPT) (ordering that the company "remain neutral throughout the remainder of the action as to the outcome of th[at] case" in a corporate control dispute).

cover each of the competing slates' proxy solicitation expenses up to $10 million. It is not clear why these amounts were chosen.

The defendants contend that this provision is necessary to level the playing field because the Steel slate is supported by vast resources that the defendants say they lack. They assert that the defendants should not be required to expend their own funds "for the stockholders to have a choice among competing slates."[10] In support of their position, they submit an expert report by Professor Guhan Subramanian, which describes both the market standards for and socially optimal approach to proxy solicitation reimbursement.

On the subject of market standards, Professor Subramanian states that Delaware corporations larger than $50 million in market capitalization routinely pay the proxy solicitation costs of an incumbent slate, "win or lose."[11] He observes that he is not aware of any instance where the company did not pay the proxy solicitation costs for an incumbent slate of directors in a proxy contest.[12] The

---

[10] Defs.' Letter at 5.

[11] Defs.' Letter Ex. C at 9-10 (quoting William T. Allen, Reinier Kraakman, & Guhan Subramanian, *Commentaries & Cases on the Law of Business Organization* 164 (4th ed. 2012)).

[12] *Id.* at 10.

defendants add that it is "customary" for the company to provide resources to directors for a proxy contest.[13]

That assumes, however, a traditional proxy contest, which "involve[s] a fight between management and insurgent shareholders over the control of the corporation in the annual election of directors."[14]   In that scenario, incumbent directors may access the corporate treasury to fund their proxy solicitation expenses in a contested election.[15]   "[I]nsurgent shareholders" will generally "finance their own bid and can hope for reimbursement only if that bid is successful."[16]

But that is not the situation here—at least based on the preliminary record before me.  There is not a single slate of incumbent directors seeking reelection over insurgent candidates.  Half of the Board supports one slate and half supports another (yet to be nominated) slate.  What the defendants describe as the

---

[13] *See* Defs.' Letter at 2.

[14] *Jana Master Fund, Ltd. v. CNET Networks, Ind.*, 954 A.2d 335, 341 (Del. Ch. 2008) (quoting Harold D. Bloomenthal & Samuel Wolff, *Securities & Federal Corporate Law* § 24:39 (2d ed. 2007)).

[15] *See Hall v. Trans-Lux Daylight Picture Screen Corp.*, 171 A. 226, 227, 230 (Del. Ch. 1934).

[16] *Jana Master Fund*, 954 A.2d at 341.  Of course, a board could potentially choose to reimburse the expenses of an insurgent slate.  And Section 113 of the Delaware General Corporation Law expressly permits Delaware corporations to adopt proxy expense reimbursement bylaws.  8 *Del. C.* § 113(a).

"insurgent" slate includes four incumbent directors. The defendant's slate would not automatically become the "Company's" simply because the CEO is in that group.

Professor Subramanian's second opinion addresses whether corporate reimbursement of proxy solicitation costs for incumbent and dissident slates is socially optimal. He states that although "there is no unambiguously optimal rule for proxy contests overall . . . the tension between facilitating value-creating proxy contests and deterring frivolous proxy contests can be evaluated in a particular context."[17] Regarding the present dispute, Professor Subramanian opines that reimbursing the expenses of both groups is "extremely likely" to be socially optimal given the Company's market cap and the proposed $10 million limit on each side's proxy solicitation costs.[18]

That may be true from a social welfare perspective. But it prompts a critical question: where does the power to direct the use of the company's resources for a contested director election lie? In my view, that power does not lie with the court. It is a core tenet of Delaware corporate law that "the board of directors has the

---

[17] Defs.' Letter Ex. C at 15.

[18] *Id.* at 17.

ultimate responsibility for managing the business and affairs of a corporation."[19]  If the board is deadlocked, the court does not act as a tiebreaker that chooses whether to open the corporate purse strings to fund the proxy contests of competing incumbent slates.[20]

With the extension of the advance notice bylaw deadline, each side is free to put forward a slate of candidates.  The stockholders will be free to decide which individuals to elect.[21]  The board that stockholders elect can then decide whether proxy expenses should be reimbursed.  The court, however, will not order the Company to fund $10 million worth of proxy solicitation costs per side.

---

[19] *Quickturn Design Sys., Inc. v. Shapiro*, 721 A.2d 1281, 1291 (Del. 1998); *see also* 8 *Del. C.* § 141(a); *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (noting that a "cardinal precept" of Delaware law is that directors manage the corporation); *Hack v. BMG Equities Corp.*, 1991 WL 101848, at *1 (Del. Ch. June 12, 1991) (granting preliminary injunction to preserve status quo where one of two directors sought to act on the corporation's behalf, and noting that "an important and fundamental decision of corporate governance[] must be made by the Board of Directors").

[20] In the related litigation filed by the defendants, alternative relief of a custodian to break the deadlock is sought.  C.A. No. 2022-0146-LWW, Dkt. 1 ¶ 115; *see* 8 *Del. C.* § 226. The plaintiffs assert that there is no authority for the relief the defendants seek.  That question is not presently before me.

[21] *See In re Gulla*, 115 A. 317, 318 (Del. Ch. 1921) ("The fitness or unfitness of individuals to become directors of the corporation was a matter for the stockholders to pass upon at the meeting, and it would be highly improper, in this proceeding, for the court to pay any heed whatever to charges and countercharges concerning the fitness of either one group or the other of the two factions.").

I reach a similar conclusion regarding the use of Company resources to reimburse the parties' litigation costs.[22] The defendants' proposed form of order would require the Company to "pay all fees and expenses" of both parties, including for each side's offensive litigation.[23] The Company's certificate of incorporation and bylaws address when directors are entitled to advancement. The court will not mandate that Company resources be used to fund offensive litigation related to the election (including a claim to disqualify a competing slate) brought by dueling factions of a divided board.

For these reasons, I will enter the form of order proposed by the plaintiffs. While the Board remains split on the question of who should serve on the Company's slate of director nominees, the Company must continue to stand neutral. The parties are invited to seek modifications of the order should necessitating circumstances arise. Their debates on the merits will be taken up at a later stage of this proceeding.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[22] *See* Defs.' Letter Ex. A ¶ 8.

[23] *Id.*