FOX, P. J.
 

 Plaintiffs brought this action to enjoin the issuance of preferred stock by defendant Latchford Glass Company to holders of its common stock as a stock dividend. This is an appeal from an order requiring plaintiffs to post security under section 834 of the Corporations Code in the amount of $5,000 in order to pursue this representative suit.
 

 At a meeting of the board of directors
 
 [1]
 
 held on July 27, 1960, defendant Ingold presented a proposal for the issuance of preferred stock to the holders of the common stock as a stock dividend for its consideration. At that time, he explained that the corporation could purchase such shares upon the death of a shareholder whose estate had a certain proportion of its value made up of stock in defendant corporation in order to make possible the payment of death taxes and other costs of probate. At that meeting, the board directed that counsel of defendant corporation should be consulted and requested to reduce such proposal to writing. This was done. Counsel’s letter sets out the way which such a plan would be implemented and the advantages which would accrue. In his letter he enclosed a form of agreement (between the corporation and interested shareholders) as a basis for discussion and consideration. These documents are attached as exhibits A and B to the complaint.
 

 At the meeting of the board on October 28, 1960, a resolution was adopted approving an amendment of the articles of incorporation to provide for the increase of the capital of defendant corporation and to authorize the issuance of preferred stock. Defendants Latchford, Ashby and Ingold
 
 *174
 
 voted in favor of this resolution. Plaintiff William Baird Marble, Jr., voted against it.
 

 At the meeting of the board on January 25, 1961, a resolution was again adopted approving an amendment of the articles of incorporation. This resolution was substantially the same as the prior one and the vote was exactly the same. On May 10, 1961, a resolution was adopted approving an amendment of the articles of incorporation to authorize 500,000 shares of preferred stock of a par value of $5.00 per share and a declaration of a stock dividend of preferred stock. There were 232,822 shares voted in favor of this resolution, of which defendant Latchford was the registered owner of 77,673 shares and defendant Ashby was the registered owner of 78,740 shares. The other shareholders voting in favor of the resolution held a total of 76,409 shares. The total number of shares voted against the resolution was 74,446, of which 73,276 shares were under the control of plaintiffs.
 

 In subsequent meetings of both the board and shareholders, the purchase by the corporation of these preferred shares upon the death of a shareholder was discussed in general terms as a possibility. No contract was presented to either of these groups for approval.
 

 An application for a permit to issue preferred stock was filed by defendant Latchford Glass Company with the Commissioner of Corporations, which application is still pending before the commissioner.
 

 This was the situation that existed at the time that plaintiffs brought this action to enjoin the issuance of preferred stock.
 
 [2]
 
 The complaint contains allegations that defendants Latchford, Ashby and Ingold entered into an oral agreement among themselves to cause defendant corporation to enter into agreements with its holders of preferred stock whereby the corporation will agree to purchase such stock under certain conditions upon their demise. It is further alleged that this oral agreement is summarized in the letter attached to the complaint as Exhibit A. Plaintiffs also attached Exhibit B to the complaint, which exhibit purports to be a sample form of the proposed contract. A temporary restraining order was issued against defendant corporation and its agents, attorneys and representatives.
 

 
 *175
 
 The defendants moved for an order requiring plaintiffs to provide security for reasonable expenses as provided in section 834 of the Corporations Code.
 
 [3]
 
 The matter was submitted upon the affidavits, declarations, memoranda and oral arguments of the respective parties.
 

 In his declaration in support of the motion for security, defendant Latchford specifically denied that he had made any agreement, written or oral, with the other defendants to attempt to cause defendant corporation to enter into contracts for the purchase of the preferred stock. He further denied allegations in the complaint that the letter attached as Exhibit A summarized and explained any agreement between the defendants. Latchford also declared that he recognized at all times that documents such as Exhibit B might not be entered into by defendant corporation; that no contract such as Exhibit B had been executed on behalf of defendant corporation; and that no contract similar to Exhibit B had been drafted in final form.
 

 After due consideration, the trial court entered its order requiring plaintiffs to deposit security in the amount of $5,000. They were given 10 days within which to furnish the specified security. Before that period expired, plaintiffs filed their notice of appeal. The order requiring security is now before this court for review.
 

 The basic question on this appeal is: did the trial judge, on the record, abuse his discretion in determining that there was no “reasonable possibility”
 
 [4]
 
 that the prosecution of this action would benefit Latchford Glass Company or its security holders ?
 
 [5]
 

 In answering that question, this court must evaluate the possible defenses which plaintiffs would have to overcome before they could prevail at a trial. If the plaintiffs’ chances of success are slight, then the lower court’s decision finds support in the record. In
 
 Olson
 
 v.
 
 Basin Oil Co.,
 
 136 Cal.App.2d 543 [288 P.2d 952], such an analysis was made by this court. The facts before the trial court in
 
 Olson
 
 justified an inference that the directors acted in good faith and exercised their
 
 *176
 
 proper business judgment in deciding not to sue. This would have been a defense to the plaintiff’s cause of action. This court said at page 560: “... we are not called upon to decide, and we do not decide, any of the issues in this action. Rather, it is our responsibility to ascertain whether there is substantial support for the trial court’s determination that there is no reasonable probability that the prosecution of this suit will benefit Basin or its security holders. From what has been said, it is apparent that plaintiffs have a number of very difficult hurdles to surmount before they could possibly prevail. Their chances of success appear to be slight. There is substantial support for the trial court’s decision.”
 

 The legality of the proposed plan, as a whole, to issue preferred stock, which the corporation, at the option of a deceased stockholder’s personal representative, would purchase to provide funds for payment of death taxes and expenses of administration, need not be decided on this appeal. The validity of such a plan cannot be determined until the actual plan is before this court. In the instant case, all that plaintiffs allege is that a certain form of contract, attached to the complaint, is an example of what the corporate directors have in mind. We will not deal in speculations that may or may not materialize. Defendants’ affidavits prima facie indicate that the corporation has the right (subject to the approval of the Corporation Commissioner) to issue the preferred stock. Those affidavits further manifest that there were no agreements of any sort that would be violative of the Corporations Code. The trial court believed the facts shown in those affidavits and those facts furnished a sufficient basis for the order requiring security to protect the corporation against loss in the event the suit turned out to be without merit. It was for the trial court to weigh the evidence and its implied finding that there is no reasonable possibility that such an action will benefit the corporation or its security holders is based upon substantial conflicting evidence and is binding on this court.
 
 (Wood
 
 v.
 
 Gordon,
 
 112 Cal.App.2d 374 [246 P.2d 84]
 
 ; Barber
 
 v.
 
 Lewis & Kaufman, Inc.,
 
 125 Cal.App.2d 95 [269 P.2d 929] ;
 
 Olson
 
 v.
 
 Basin Oil Co., supra,
 
 136 Cal.App.2d 543.)
 

 Defendants point out four defenses, any one of which (if established) would be sufficient to show that plaintiffs could not maintain their action successfully, and therefore such action could not benefit the corporation. These defenses are: (1) that plaintiffs failed to pursue their administrative rem
 
 *177
 
 edies, and thus could not state grounds for relief; (2) that plaintiffs had adequate legal remedies available to them, and thus could not state grounds for injunctive relief; (3) that plaintiffs brought their alleged action prematurely, and thus could not state grounds for relief; and (4) that valid corporate purposes underlie agreements by corporations to fund the death taxes of shareholders by the purchase of shares, and the courts will not substitute their judgment for that of the majority of the board of directors.
 

 Only two of these defenses need here be discussed. Plaintiffs in their complaint are attempting to enjoin mere possible action on the part of defendant corporation and its board of directors. The authorization and issuance of preferred stock has been approved by majorities of the board of directors and the shareholders at duly called meetings. An application for a permit to issue the preferred stock as a stock dividend is now pending before the Commissioner of Corporations. The plaintiffs’ position on this appeal is that such preferred stock cannot be issued. They contend that the issuance of the preferred stock would be invalid because the defendant corporation may at some time in the future enter into illegal contracts with some of the holders of the preferred stock whereby the corporation will agree to purchase their shares upon their demise. Plaintiffs are therefore objecting to what they term “a proposed contract” which they set forth as Exhibit B to their complaint. The complaint shows on its face that neither this “proposed contract” nor one similar thereto has ever been agreed upon or presented for execution ; consideration of any contract of this type has never progressed beyond the stage of general discussion. The complaint (including the exhibits attached thereto) discloses: (1) that a “proposed contract for use by the company and the interested contracting shareholders” was prepared; (2) that “said proposed contract marked Exhibit ‘B’ or any contract similar thereto was not presented for consideration by said stockholders” at the meeting of shareholders on May 10, 1961; (2) that plaintiffs are informed and believe that, after a permit to issue the preferred stock has been granted by the Commissioner of Corporations, defendant directors “will be in a position ... to bind defendant corporation to redeem such stock to be issued”; (4) that the so-called “proposed contract” was submitted to defendant directors as a mere “outline” of the type of contract between corporations and shareholders used for the purchase of shares to fund death
 
 *178
 
 taxes; and (5) that the so-called “proposed contract” was a mere sample with possible variations in the provisions.
 

 Moreover, the attached declaration of William J. Latchford shows the status of the so-called “proposed contract.” He states the following: “The document set forth as Exhibit B vras prepared by counsel for defendant corporation as an example of an agreement between a corporation and shareholders for the purchase and sale of stock. At the meeting of the board of directors of defendant corporation on October 28, 1960, said document was merely referred to as an example of the type of contract sometimes used”; that he has made no agreement, written or oral, with either or both of defendants Ingold and Ashby to attempt to cause the execution by defendant corporation of a document such as Exhibit B; that he recognized that a document such as Exhibit B might not be entered into by defendant corporation; that the execution of a document such as Exhibit B by defendant corporation and interested stockholders was mentioned at the meeting of shareholders on May 10, 1961, “in general terms and as a mere possibility”; that no contract such as set forth in Exhibit B or similar thereto has been executed by or on behalf of defendant corporation, nor has counsel for defendant corporation or other attorneys been instructed to draft a contract similar to Exhibit B in form to be considered for execution.
 

 The declaration of William J. Latchford (and even the complaint itself) shows that defendant directors have not even approached the agreement stage on a contract such as Exhibit B. Thus, plaintiffs are seeking to have the court prevent defendant corporation from entering into a contract of uncertain provisions which may or may not be presented to it at some indefinite time in the future, and which, even if presented, may not be executed by it. Thus plaintiffs’ position is extremely tenuous and it appears highly unlikely that plaintiffs would prevail at a trial on the merits. In such circumstances the trial court was justified in determining that there was no reasonable possibility that the corporation or its security holders would be benefited by the prosecution of this action.
 

 This conclusion is fortified by the fact that the issuance of preferred stock as a dividend is a managerial decision committed to the board of directors of a corporation. A court will not substitute its judgment for the business judgment of the board of directors made in good faith. A recent
 
 *179
 
 example of the application of these principles is
 
 Fairchild
 
 v.
 
 Bank of America,
 
 192 Cal.App.2d 252 [13 Cal.Rptr. 491]. There, the plaintiff challenged the choice of counsel made by defendant bank in conducting its work as trustee and personal representative of deceased. The judgment of dismissal following the sustaining of a general demurrer was affirmed on appeal. This court said (p. 256) : “ ' “It is an elementary principle of law that a court has no power or right to intermeddle with the internal affairs of a corporation in the absence of fraudulent conduct on the part of those who have been lawfully entrusted with the management and conduct of its affairs. The principle has been so well settled and established in both federal and state jurisdictions that it seems unnecessary to give further citations. [Citation.] The authority of the directors in the conduct of the business of a corporation must be regarded as absolute when they act within the law. The court cannot substitute its judgment for that of the directors. [Citation.] ” ’ ” See also
 
 Wall
 
 v.
 
 Board of Regents,
 
 38 Cal.App.2d 698, 699 [102 P.2d 533];
 
 Fornaseri
 
 v.
 
 Cosmosart Realty & Building Corp.,
 
 96 Cal.App. 549, 557-558 [274 P. 597].)
 

 In view of the significance of the matters herein considered, it cannot be said, as a matter of law, that the trial court abused its discretion in requiring plaintiffs to furnish security pursuant to section 834 of the Corporations Code.
 

 The order is affirmed.
 

 Ashburn, J., and Herndon, J., concurred.
 

 A petition for a rehearing was denied July 23, 1962.
 

 [1]
 

 Defendant William J. Latchford is the president and a director of defendant corporation and an owner of 77,673 shares of its common stock. Defendants Marjorie Latchford Ashby and Ruben F. Ingold are also directors of defendant corporation and hold respectively 78,740 and 12,970 shares of common stock therein. The last of the four directors of defendant corporation is plaintiff William Baird Marble, Jr.
 

 [2]
 

 In addition to the defendant corporation and the three individual directors mentioned above, the Commissioner of Corporations and the Secretary of State were named as defendants but are not involved in this appeal.
 

 [3]
 

 This motion was made on the ground that there was "no reasonable probability that the prosecution of the cause of action alleged in the complaint against said defendants will benefit defendant corporation or its security holders. ’
 
 ’
 

 [4]
 

 Corporations Code section 834 was amended in 1959 by substituting "possibility" for "probability" in subdivision (b)(1).
 

 [5]
 

 There is no contention that the amount of the security required is unreasonable.