Martha H. OSER, Appellant,

v.

R. C. WILCOX, R. Ronketti, G. E. Johnson, John G. McKean, H. W. Houston, Houston Fearless Corporation, Appellees.

No. 18733.

United States Court of Appeals
Ninth Circuit.

Nov. 23, 1964.

Clifford A. Hemmerling, Howard B. Miller, Richards, Watson & Hemmerling, Los Angeles, Cal., for appellant.

F. G. Stapleton, Stapleton, Weinberg & Isen, Los Angeles, Cal., for appellee Houston Fearless Corp.

Harry L. Gershon, Fendler, Gershon & Warner, Beverly Hills, Cal., for appellee Harvey L. Karp.

C. Bernard Kaufman, Gainsley & Kaufman, Los Angeles, Cal., for appellees Houston, McKean, Ronketti & Johnson.

Daniel A. Weber, Ovvie Miller, Weber, Schwartz & Alschuler, Beverly Hills, Cal., for appellee R. C. Wilcox.

Before BARNES, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

This is a stockholder's derivative action arising in California and commenced in a federal court because of diversity of citizenship. Pursuant to California Corporations Code, section 834, defendants moved for an order requiring the posting by plaintiff of security for costs. The motions were granted and the security was fixed in the amount of thirty-five thousand dollars. Plaintiff declined to post such security, whereupon the action was dismissed. Plaintiff appeals.

The plaintiff and appellant is Martha H. Oser, a stockholder of Houston Fearless Corporation (Fearless), a California corporation. The defendants are the corporation and the following seven individuals, each alleged to be a past or present officer or director of the corporation: R. C. Wilcox, Richard Woike, George E. Johnson, Harvey L. Karp, John G. McKean, H. W. Houston and R. Ronketti.[1]

In her first amended complaint Mrs. Oser alleged that the personal defendants had breached their respective fiduciary duties as officers or directors of Fearless in connection with a series of transactions extending from 1954 to August, 1959. These transactions, as alleged in that pleading, may be summarized as follows:

1. In 1954, at a time when Wilcox and one Benjamin Smith dominated and controlled Fearless through ownership of stock and debentures, they sold to Fearless, for three million dollars, the stock of another company, this price being excessive and out of proportion to the value of the stock.

2. Payment of this purchase price was to be made in monthly installments of $8,277.77. However, because of the control and domination exercised by Wilcox, the corporation prepaid a sum in excess of one million dollars thereon during the years 1955 and 1956.

3. During this same period and prior thereto, Wilcox caused the corporation to not pay any monies into a sinking fund for retirement of the debentures as required by the terms thereof. This was part of a plan and scheme by Wilcox to maintain control of the corporation.

4. On January 5, 1956, while Wilcox and Smith controlled Fearless, they caused it to sell all of its lands and buildings to them for $388,000, which sum was substantially less than the fair market value thereof.

5. Concurrently with this sale, Wilcox and Smith leased these lands and buildings back to the corporation for an excessive rental.

6. On April 29, 1958, the corporation issued three promissory notes, in the initial aggregate amount of $1,380,407.-62, reduced to the aggregate amount of $1,097,139.87 by June 30, 1959, the validity of which is doubtful because given in payment of the unpaid portion of the excessive purchase price paid by Fearless to Wilcox and Smith for the stock of another company. These promissory notes were owned by Wilcox in the spring and summer of 1959 when the transactions referred to below occurred.

7. In the forepart of 1959, Wilcox entered into a plan and conspiracy with defendant Woike and others to enrich themselves at the expense of Fearless. Among the officers and directors of Fearless who participated in this plan and were part of the conspiracy, were defendants Johnson, Karp, McKean, Houston and Ronketti. The plant contemplated transfer of control of Fearless from

1. Three other personal defendants are named in the amended complaint but, under circumstances not revealed in the record before us, they seem to have disappeared from the case.

Wilcox to Woike, David G. Baird, Noah Dietrich and Emmett Steele, known as the "Woike group." It also involved the purchase by Woike from Wilcox of the latter's claims against Fearless (debentures, promissory notes and open account indebtedness), at a price approximately equal to the full principal amount of the claims. In addition, the plan contemplated the transfer or surrender of the promissory notes and open account indebtedness by Woike to Fearless in return for the issuance by Fearless of an amount of stock worth substantially more than the debts transferred or surrendered.

8. Pursuant to the plan and conspiracy referred to above, a notice and proxy statement was issued in connection with the increase in the corporation's authorized capital stock, made necessary under the plan and conspiracy. This notice and proxy statement contained representations known to the individual defendants to be false and misleading with regard to the immediate purpose of the proposed increase in authorized capital stock. By reason thereof, the stockholders' resolution approving the proposed increase, adopted in reliance on the notice and proxy statement referred to above, and the issuance of corporate stock to Woike pursuant to that resolution, were null and void.

9. Following this action by the stockholders, Woike personally and through his wholly-owned corporation, Metrocap Company, Inc., entered into a contract with Wilcox for the purchase and sale of the purported corporate indebtedness owned by Wilcox at a price equivalent to the principal amount thereof plus accrued interest, and for the transfer of control of Fearless from Wilcox to Woike. The contract was subject to the condition that Fearless, on or before August 15, 1959, agree to permit the conversion of the promissory notes and open book indebtedness referred to above into corporate stock at the rate of one dollar of debt for each share of stock to be issued. It was a further condition that, on or before August 15, 1959, the California Commissioner of Corporations would approve the issuance of such stock.[2]

10. All of the terms and conditions of the contract referred to above were fulfilled, including the obtaining of the contemplated approval of the California Commissioner of Corporations. The result was that 1,389,820 shares of Fearless were issued to Woike in return for the cancellation of an indebtedness of substantially lesser value, and the Woike group received dominion and control of the corporation.

Based upon the allegations summarized above, Mrs. Oser, in her amended complaint, asked for the following relief: (1) rescission of the transaction whereby the corporation transferred 1,389,820 shares of its stock to Woike; (2) an accounting by Wilcox and Woike, and payment by them to the corporation of an amount equal to its losses resulting from these transactions, and an amount equal to the profits realized by them and their associates; (3) cancellation of the consulting contract with Wilcox; (4)

2. Among the other terms of this contract, as alleged in the amended complaint, were the following: (1) Wilcox would deliver to Woike the resignation of five of the corporation's seven directors elected at the stockholders' and debenture holders' meeting on April 27, 1959; (2) Wilcox would vote his 450,000 shares of the corporation's stock for the election of Woike and his nominees as directors of Fearless; (3) Wilcox agreed not to sell part of his shares during the specified period and, in case of sale, granted Woike a right of first refusal; (4) Woike would cause the corporation to employ Wilcox as consultant for five years at a total salary of $118,541, upon the understanding that Wilcox was not to be required to spend more than twenty-five per cent of his regular business hours in performing his duties, and that in no event were such duties to unreasonably interfere wtih his other activities; (5) the corporation would issue estoppel certificates to the effect that its promissory notes referred to above were valid and subsisting obligations; and (6) the performance of the agreement by Wilcox and Woike would be secured by specified escrow arrangements.

payment to the corporation by the other individual defendants, of a sum equal to all losses sustained by the corporation, and profits obtained by Wilcox and Woike as a result of the sale of Fearless stock to Woike; (5) an award for costs and expenses including reasonable counsel fees; and (6) the grant of such other and further relief as may be just.

Following service of the amended complaint, defendants moved for an order requiring the posting by plaintiff of security for costs including attorneys fees.[3] These motions were made pursuant to California Corporations Code, section 834(b) and (c), relating to derivative actions,[4] it being asserted that there is no reasonable possibility that the prosecution of the cause of action will benefit the corporation.[5]

The motions were supported by affidavits and memoranda of points and authorities. In these materials defendants' primary effort was directed towards curity to be furnished by the plaintiff for reasonable expenses, including attorney's fees, which may be incurred by the moving party and the corporation in connection with such action, including expenses for which said corporation may become liable pursuant to Section 830. A determination by the court that security either shall or shall not be furnished or shall be furnished as to one or more defendants and not as to others, shall not be deemed a determination of any one or more issues in the action or of the merits thereof. * * * If the court, upon any such motion, makes a determination that security shall be furnished by the plaintiff as to any one or more defendants, the action shall be dismissed as to such defendant or defendants, unless the security required by the court shall have been furnished within such reasonable time as may be fixed by the court.

**"Stay pending disposition of motion**

"(c) If any such motion is filed, no pleadings need be filed by the corporation or any other defendant, and the prosecution of such action shall be stayed, until 10 days after such motion shall have been disposed of."

---

3. Johnson, McKean, Houston and Ronketti joined in one motion. The corporation and Karp, Wilcox and Woike each filed separate motions.

4. The pertinent part of section 834(b) and (c) reads as follows:

"§ 834. **Shareholder's actions**

*       *       *       *       *

"**Motion to require security; grounds; hearing on motion**

"(b) In any such action, at any time within 30 days after service of summons upon the corporation or any defendant who is an officer or director of the corporation, or held such office at the time of the acts complained of, the corporation or such defendant may move the court for an order, upon notice and hearing, requiring the plaintiff to furnish security as hereinafter provided. Such motion shall be based upon one or more of the following grounds:

"(1) That there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its security holders;

"(2) That the moving party, if other than the corporation, did not participate in the transaction complained of in any capacity.

*       *       *       *       *

"At the hearing upon such motion, the court shall consider such evidence, written or oral, by witnesses or affidavit, as may be material: (a) to the ground or grounds upon which the motion is based, or (b) to a determination of the probable reasonable expenses, including attorney's fees, of the corporation and the moving party which will be incurred in the defense of the action. If the court determines, after hearing the evidence adduced by the parties at the hearing, that the moving party has established a probability in support of any of the grounds upon which the motion is based, the court shall fix the nature and amount of se-

5. Some of the personal defendants also sought to invoke, to some extent, the second statutory ground for such a motion, namely, that such defendant did not participate in the transaction complained of in any capacity. No defendant, however, asserted that he was neither an officer or director during any of the time the alleged transactions occurred. It follows that since the action is predicated upon breach of fiduciary duty as an officer or director of the company, participation "in any capacity" in the transactions complained of was not effectively disclaimed by any defendant. The district court did not, as to any defendant, predicate its order for security on this statutory ground.

showing that each' of them had one or more valid defenses to the action and that plaintiff therefore could not prevail on the merits. The unassailable reasoning here was that if plaintiff could not prevail on the merits, prosecution of the cause of action would not benefit the corporation or its security holders. See Marble, Jr. v. Latchford Glass Co., 205 Cal.App.2d 171, 22 Cal.Rptr. 789, 791.

But the corporation also endeavored to establish, in its memorandum, that if plaintiff did win the lawsuit, the relief sought, if granted, would result in disaster to the corporation. On that basis the corporation argued that, quite apart from the prospect of plaintiff's prevailing on the merits, prosecution of the cause of action would not benefit the corporation or its security holders.

Counter affidavits [6] and a memorandum of points and authorities were filed, and at the hearing on the motions, one exhibit was received and one witness testified. In its decision and order thereafter entered, granting the motions for security for costs, the district court held that assuming that plaintiff could prevail on the merits as to any of the defendants, the relief which could be accorded would cause harm to the corporation. Accordingly, the court held, there is no "reasonable possibility" that prosecution of the cause of action will benefit the corporation or its security holders.[7]

6. In these counter affidavits it was alleged, among other things, that at least four of the seven corporate directors who voted to approve the 1959 transaction, namely Wilcox, Karp, Ronketti and Johnson, held secret stock options, the value of which depended on consummation of the 1959 transaction. These secret options were not pleaded in the first amended complaint, plaintiff asserted, because they were not discovered by plaintiff until the eve of the hearing on the motions. After entry of the order requiring security for costs, plaintiff moved to amend its first amended complaint to add allegations concerning these secret stock options and other matters. This motion was opposed on the ground that under California Corporations Code, § 834, entry of the order requiring security for costs operated to stay all proceedings until such security had been posted. After hearing, the motion to amend was denied.

7. In its decision and order the district court stated, in part:
"The facts before the Court pertinent to the motions for security for costs indicate the reorganization and refinancing complained of worked for the benefit of the corporation; but plaintiff contends that even though the consummated plan may have been beneficial to the corporation, it also benefited the defendant directors; that there was a conflict of interests between defendants as members of the board of directors and in their individual capacities and that the directors should be required to 'disgorge' any profits which may have been realized because of such reorganization and refinancing.

"When demand was made by plaintiff upon the new board of directors (installed after the reorganization plan and refinancing) to prosecute this action, the board came to the conclusion that prosecution of the action would result in harm rather than benefit to the corporation.

"Assuming, arguendo, that there may have been a conflict of interests, the directors' acts should not now be set aside unless a decree would be beneficial to the corporation. From the facts now before the Court it would seem this action, regardless of the outcome, would result in detriment rather than in benefit to the corporation.

"At the time the plan to refinance and reorganize was initiated the corporation was in desperate financial straits. New capital and new management had to be brought in to salvage the corporate business. The plan as worked out may not have been ideal; but it was the only plan proposed. The board of directors was faced with the alternative of accepting the submitted plan or facing probable bankruptcy.

"The judgment of the board to accept the plan as proposed has been vindicated, for upon its consummation (the injection of new capital and new management) the business of the corporation steadily improved, and the stock rose to an increased value of more than four hundred percent. To attempt now to go back and set aside the consummated plan would cause harm to the corporation. The most this action would accomplish is a decree that those members of the board of directors who approved and realized financial benefit

It was provided in the order of December 28, 1962, requiring the posting of security for costs in the sum of thirty-five thousand dollars, that such security shall be filed on or before February 11, 1963. As before stated, plaintiff declined to do so and because of this a judgment dismissing the action was entered on February 21, 1963. This appeal followed.[8]

Plaintiff challenges the correctness of the district court's conclusion that any relief which could be accorded would be harmful to the corporation. She argues that if plaintiff prevails against one or more of the defendants, the court could frame a decree that would benefit the corporation.

As indicated in the portion of the decision and order quoted in the margin, the district court concluded that the described reorganization and refinancing which occurred in 1959 worked for the benefit of the corporation. This was true, the court reasoned, because the plan provided new capital and new management at the time the corporation was in desperate financial straits. This led the district court to conclude that the setting aside of this consummated plan would cause harm to the corporation. It was for this reason that the court determined that there was no reasonable possibility that prosecution of the cause of action will benefit the corporation or its security holders.

It thus appears that the district court based its ultimate conclusion on the theory that rescission of the 1959 transaction to which the corporation was a party, was the only relief sought or, by any reasonable possibility, obtainable.

In our opinion, however, rescission of the 1959 stock transfer transaction was not the only relief sought, nor the only relief which by any reasonable possibility would be obtainable were plaintiff to prevail in the action as against one or more of the defendants.

Among other items of relief, plaintiff sought to require Wilcox and Woike to account for and pay to the corporation its losses and to account for the profits obtained by them and by their associates. Plaintiff also sought to require the other individual defendants to pay to the corporation a sum equal to all losses sustained by it, and profits obtained by Wilcox and Woike, as a result of the sale of its stock to Woike. None of the appellees has suggested any reason why, if plaintiff prevails as to this part of her claim and if the request for such accounting and payment is otherwise appropriate, such relief could not be granted without also rescinding the 1959 transaction referred to above.[9]

Nor has it been suggested why, on this record, it should be held that there is no reasonable possibility that, if plaintiff prevails on the merits as to any defendant, a decretal provision requiring such accounting and payment could be appropriately entered. The district court did not so hold but, on the contrary, implied in its decision and order that such a rem-

---

from the plan would be required to return the benefit obtained.

"This Court is not required to and does not now decide the issues in the action. The only responsibility of the Court in passing upon the Motions before it is to determine whether there is reasonable possibilty that prosecution of the action would benefit the corporation. We find to the contrary."

8. Separate briefs have been filed by appellees Wilcox, Karp and the corporation. Appellees Johnson, McKean, Houston and Ronketti have joined in one brief. Appellee Woike, who appeared in the district court in propria personam, has filed no brief or otherwise participated in the appeal.

9. Among the briefs filed in this court by the defendants, only that of the corporation contains any argument dealing specifically with the possibility of framing a decree beneficial to the corporation in the event plaintiff prevails on the merits as to any defendant. And, as indicated above, the corporation's brief contains no discussion of the benefit the corporation might receive from a decree requiring Wilcox and Woike to account and pay, and requiring the other defendants to pay, as sought in the request for relief referred to above.

edy might be appropriate. This is indicated by that court's observation that "[t]he most this action would accomplish is a decree that those members of the board of directors who approved and realized financial benefit from the plan be required to return the benefit obtained."

In addition to the two requests for relief referred to above, the amended complaint contained the usual prayer for such other and further relief as may be just. Under this request, or even in the absence of it, a court of equity, in this contested action, would be able to grant the relief to which plaintiff is entitled, assuming that she prevails on the merits as to one or more defendants.[10]

Thus there is a reasonable possibility that, if plaintiff prevails on the merits as to Woike, it would be appropriate, without rescinding the transaction, to decree cancellation of an amount of stock issued to him equal to the alleged excess value placed on the debt for which shares were issued.[11] Likewise, there is a reasonable possibility that, if plaintiff prevails on the merits as to Wilcox, it would be appropriate, without rescinding the 1959 transaction, to decree that he pay to the corporation the alleged illegal premium he received for the sale of control in 1959.[12]

We have not overlooked the fact that the district court concluded that the 1959 reorganization and refinancing complained of worked for the benefit of the corporation.[13] Assuming, as we do for present purposes, that this conclusion is correct, it does not necessarily preclude relief of some kind other than rescission.

We therefore conclude that the order under review is not sustainable on the grounds relied upon by the district court.

Appellees, however, argue that the order should be affirmed because, on the showing made, there is no reasonable possibility that plaintiff can prevail on the merits as to any defendant. Indeed, except for the corporation, appellees predicate practically their entire defense of the district court order on this ground.

■ In our view, the order under review may not be sustained on this ground because it was not one which was relied upon by the district court.[14]

---

10. See Rule 54(c), Federal Rules of Civil Procedure, Federal Deposit Insurance Corp. v. Myhre, 9 Cir., 249 F.2d 887, 889; Hamill v. Maryland Cas. Co., 10 Cir., 209 F.2d 338, 340; 6 Moore's Federal Practice, 2d ed., § 54.62, pages 1207 and 1211.

11. This would, in effect, be a "price revision" such as was accomplished in Marian v. Mariani, 276 App.Div. 205, 93 N.Y.S.2d 370, or a revision of the contract to which the corporation was a party, to meet the test of fairness. See Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp., 89 U.S.App.D.C. 171, 193 F.2d 666.

12. In referring to these possible remedies short of rescission of the 1959 transaction in the event plaintiff prevails we do not mean to imply that there may not be other appropriate remedies short of rescission, nor that upon the whole record of a complete trial, rescission itself may not be found to be appropriate and beneficial to the corporation. Neither do we mean to imply that one or more of these suggested remedies would necessarily be appropriate. And it is to be noted that this entire discussion as to the kinds of remedies which might be appropriate is on the assumption that plaintiff prevails on the merits as to one or more of the defendants, as to which we intend no intimation as to our views.

13. The district court made it clear that the 1959 plan was not necessarily the best plan which could have been devised, saying: "The plan as worked out may not have been ideal; but it was the only plan proposed."

14. The district court stated in its decision and order that "[a]ssuming, arguendo, that there may have been a conflict of interests, the directors' acts should not now be set aside unless a decree would be beneficial to the corporation." It also stated that "[t]he most this action would accomplish is a decree that those members of the board of directors who approved and realized financial benefit from the plan be required to return the benefit obtained." In view-

In so stating, we are aware of the general principle of appellate adjudication to the effect that if an order or judgment may be sustained upon any ground, even one which runs contrary to the trial court's reasoning, this will be done.[15] For the reasons indicated below, however, this principle is not applicable under the circumstances of this case.

 Under section 834(b), the granting of security for costs is mandatory if defendants established one of the statutory grounds for such relief. But the determination of whether defendants established a statutory ground for granting security for costs under section 834(b) lies within the sound discretion of the trial court and is not to be reversed except for an abuse of that discretion. See Marble, Jr. v. Latchford Glass Company, 205 Cal.App.2d 171, 22 Cal.Rptr. 789, 791, 794.

 Since the district court has not, in the exercise of its discretion, determined that there is a probability that there is no reasonable possibility that plaintiff can prevail on the merits [16] the order requiring security for costs cannot rest on that ground. Where an exercise of discretion properly goes into a trial court determination of whether to grant or deny particular relief, the grounds upon which the order is based are those upon which it must be judged. Cf., S. E. C. v. Chenery Corp., 318 U.S. 80, 88, 93–94, 63 S.Ct. 454, 87 L.Ed. 626.

The judgment dismissing the action is reversed, the order requiring security for costs is set aside, and the cause is remanded to the district court for further proceedings.

of these statements, the court's observation that the 1959 reorganization and refinancing worked for the benefit of the corporation cannot be taken as even an implied determination that there was no reasonable probability that plaintiff would prevail on the merits as to any or all of the defendants.

15. Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314; Brown v. Allen, 344 U.S. 443, 459, 73 S.Ct. 397, 97 L.Ed. 469; J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36.

16. This seemingly clumsy way of stating the statutory test is made necessary by the fact that while, in 1959, "no reasonable probability" was changed to "no reasonable possibility" in the statement of the first statutory ground set out in section 834(b), the words "established a probability" were retained in the last paragraph of section 834(b). See comment by Department of Continuing Education of the Bar of the University of California Extension, prepared for the Committee on Continuing Education of the California Bar Association, 34 Cal. State Bar Journal, 678, at 682 (1959).