[No. A028469. First Dist., Div. Four. Dec. 31, 1986.]

HELGA JOHNSON et al., Plaintiffs and Respondents, v.
TAGO, INC., et al., Defendants and Appellants.

TAGO, INC., Plaintiff and Appellant, v.
HELGA JOHNSON et al., Defendants and Respondents.

508

COUNSEL

Eric W. Jorgensen, Thomas M. Peterson, John E. Schulz and Brobeck, Phleger & Harrison for Defendants and Appellants and Plaintiff and Appellant.

Robert C. Johnson and Helga Johnson, in pro. per., for Plaintiffs and Respondents and Defendants and Respondents.

OPINION

POCHÉ, J.—The issue presented is whether Corporations Code section 600 authorizes the award of expenses and attorneys' fees to shareholders who are in the process of waging a corporate proxy fight. We hold that it does not.

## BACKGROUND AND PROCEDURAL SEQUENCE

Tago, Inc. is in the business of developing and marketing pharmaceutical products. Founded by Helga and Robert Johnson as a partnership in 1971, it was incorporated two years later in accordance with the laws of California. Tago's shares are publicly traded. Prior to June 1984 Helga Johnson was one of Tago's five directors, as well as its president and technical director. Robert Johnson was chief executive officer and also a director. Together the Johnsons owned approximately 41 percent of Tago's outstanding stock.

The following events occurred in 1984:

On June 28th Tago's board of directors convened a special board meeting. Presented with a demand that they resign their positions as officers, the Johnsons refused. The three other members of the board, Charles Antell, Harvey Orzech, and Thomas C. Thompson, outvoted the Johnsons

and adopted a resolution removing the Johnsons as officers of Tago. The Johnsons were directed to vacate their offices and cease involvement in company operations. The Johnsons refused to do so without a court order.

The next day the Johnsons commenced action No. 286845 by filing a complaint against Tago, Antell, Orzech, and Thompson (hereinafter collectively referred to as defendants). The Johnsons alleged that, despite their repeated requests, the other directors had refused to hold an annual shareholders' meeting. The Johnsons sought damages and injunctive relief restraining defendants from "conducting any business," "terminating" them, or "employing Thomas C. Thompson as Chief Executive Officer" until a shareholders' meeting was conducted. The Johnsons also sought attorneys' fees on the theory that if they "are successful in this action a substantial benefit will result to defendant corporation." On the Johnsons' application the trial court that same day made an order to show cause and temporary restraining order (TRO) directing that, pending a hearing scheduled for July 19th, "the business of the corporation will be conducted as it is presently being conducted with no major changes."

At another meeting held on July 2d, Tago's board of directors appointed new officers, including an acting chief executive officer (not Thompson); renewed the directives of the June 28th meeting; and scheduled a shareholders' meeting for September 6th. The following day Tago initiated action No. 286930 for injunctive relief restraining the Johnsons from (among other things) "in any way exercising any purported powers as an officer . . . or from participating by any means in the management and operation of the corporation, except as directors." Tago too secured a TRO granting this relief and an order to show cause, likewise to be heard on July 19th.

By the time the July 19th hearing on the TROs was called, the trial court had received a mass of declarations and points and authorities detailing the bitterness and internal operating difficulties generated by this controversy. During the course of arguments at the hearing, the court was advised of problems attending an impending proxy fight for control of the board of directors and the corporation. At the conclusion of the hearing the court announced that a preliminary injunction would issue granting certain of the relief sought by both sides. As requested by the Johnsons, a shareholders' meeting was ordered held on September 6th. Defendants prevailed in having the Johnsons enjoined from "involving themselves in any way in the conduct of the ordinary business affairs of the corporation."

At the same time the court made certain determinations which, with some nonsubstantive editing by this court, were announced as follows: "All of the fees, costs, and expenses of proxy solicitation on either side shall be

paid by the corporation. [¶] There shall be allowed a sum not to exceed $25,000 as a retainer by the corporation to its counsel, . . . [¶] In light of the fact that the Johnsons are 41 percent shareholders of the corporation, there shall be paid by the corporation to counsel for the Johnsons as a retainer . . . not more than 41 percent of $25,000."

Claiming that the substance of these determinations went beyond the issues and relief framed by the pleadings, Tago requested that the preliminary injunction be modified to delete them. On August 3d the trial court conducted a hearing on this request, but the court declined to modify the provisions of its ruling in any significant particular.

The trial court's determinations were embodied in two written orders. The first, an "Order Setting Shareholders' Meeting," is not the subject of any dispute. The second order was a preliminary injunction filed on August 17th. The pertinent provisions of the injunction direct that Tago "shall issue to the Johnsons' lawyers a check for forty-one percent . . . of $25,000 as a retainer for their attorneys' fees" and "shall pay all proxy solicitation expenses incurred by TAGO, Inc., its Board, or the Johnsons."[1]

This timely appeal by Tago followed.[2]

---

[1]After no small amount of confusion caused by Tago's attorneys, we have ascertained that the provisions of the preliminary injunction quoted in the text are the only rulings at issue on this appeal. (See fn. 2, *post.)* The preceeding narrative has therefore been confined to those portions of the record on appeal which pertain to these rulings. Most of the record is irrelevant for this purpose.

Both sides have made statements in their briefs referring to events which are outside the record and which occurred long after the preliminary injunction was filed. This is improper (Cal. Rules of Court, rule 15(a); *Davis v. Thayer* (1980) 113 Cal.App.3d 892, 912 [170 Cal.Rptr. 328]) and these statements have been disregarded. (*Snider v. Basinger* (1976) 61 Cal.App.3d 819, 823 [132 Cal.Rptr. 637]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 252, pp. 258-259.)

[2]Appeal from the preliminary injunction is proper as authorized by statute (Code Civ. Proc., § 904.1, subd. (f)) and because its provisions require the payment of money. (*Trimble v. Steinfeldt* (1986) 178 Cal.App.3d 646, 650 [224 Cal.Rptr. 195]; *Kibrej v. Fisher* (1983) 148 Cal.App.3d 1113, 1115 [196 Cal.Rptr. 454]; 9 Witkin, *op. cit. supra,* Appeal, § 45, p. 69.) At various intervals in the litigation Tago's attorneys saw fit to file no fewer than four notices of appeal, the last being a blunderbuss "Amended and Supplemental Notice of Appeal" by which Tago purports to appeal "from each oral and written order entered . . . in these proceedings." This encompasses a myriad of rulings and decisions, almost all of which are not appealable. Many of these orders were not designated by Tago for inclusion in the record on appeal. In another notice Tago purported to appeal from an order which, upon inquiry from this court, it admitted did not exist. In any event, the only actions by the trial court which Tago addresses in its briefs are the proxy expense and attorneys' fees provisions of the preliminary injunction. Our review is restricted to those provisions, and the appeals from all other orders will be dismissed.

Seldom has this court witnessed in a single appeal so many mistakes in elementary appellate procedure.

Review

Tago employs a broad array of arguments in support of its general contention that no authority, statutory or otherwise, resided in the trial court to order Tago to pay plaintiffs' proxy expenses and attorneys' fees. This contention will be sustained without it being necessary to consider all of Tago's arguments. Before examining the respective propriety of the proxy expenses and the attorneys' fees provisions, we address an argument which challenges both provisions.

■ Tago claims that both payment directives are defective because they were not among the forms of relief sought by the Johnsons but were instead awarded by the trial court on its own initiative. This is only partially correct. The Johnsons did not in action No. 286845 seek recovery of expenses attending a proxy fight, but they did in their complaint pray for attorneys' fees on the assumption that their eventual success would result in "a substantial benefit" to Tago. This deficiency is not an impediment to the trial court's power to award relief otherwise deemed appropriate.

"The subject matter of an action and the issues involved are determinable from the facts alleged rather than from the title of the pleading or the character of damage recovery suggested in connection with the prayer for relief. [Citations.] In defining the relief which may be awarded to plaintiff . . ., section 580 of the Code of Civil Procedure provides that 'the court may grant him any relief consistent with the case made by the complaint and embraced within the issues.' Moreover, the matter of pleading becomes unimportant when a case is fairly tried upon the merits and under circumstances which indicate that nothing in the pleadings misled the unsuccessful litigant to his injury." (*Buxbom v. Smith* (1944) 23 Cal.2d 535, 542-543 [145 P.2d 305]; see *Collison v. Thomas* (1961) 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51]; *Harper v. Kaiser Cement Corp.* (1983) 144 Cal.App.3d 616, 620-621 [192 Cal.Rptr. 720]; *Duncan v. Sunset Agricultural Minerals* (1969) 273 Cal.App.2d 489, 494 [78 Cal.Rptr. 339]; 4 Witkin, *op. cit. supra,* Pleading, § 400, pp. 449-450.)

These principles defeat Tago's claim. Tago raised the identical objection when it sought modification of the injunction. By the time the injunction was actually filed the trial court had considered and rejected Tago's argument. Given that the injunction was not filed until after two wide-ranging hearings had been conducted, the case qualifies as one "fairly tried upon the

merits." Tago has identified no prejudice accruing to it by virtue of any pleading inadequacy, and we discern none. Tago's claim is rejected accordingly.

We now turn to the proxy expenses and attorneys' fees provisions of the injunction.

### Proxy Expenses

The governing principles in this area may be briefly stated. Proxy expenses can be reimbursed from a corporate treasury on the theory that expenditures incurred promote the shareholders' intelligent evaluation and adoption of policy or fundamental decisions. The expenses which may be repaid are limited to questions of policy, not personnel (i.e., management attempting to entrench itself in office), although the distinction is often ethereal in specific instances. Repayment is generally given only to the winners, be they management incumbents or successful insurgents. Losers may be compensated but ordinarily are not. Reimbursement is authorized by either the board of directors or the shareholders. Judicial review is available but is confined to the issues of whether the expenses recompensed were reasonable and not ultra vires. (See, e.g., *Braude* v. *Havenner* (1974) 38 Cal.App.3d 526, 532 [113 Cal.Rptr. 386]; *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (1934) 20 Del.Ch. 78 [171 A. 226]; *Rosenfeld* v. *Fairchild Engine and Airplane Corp.* (1955) 309 N.Y. 168 [128 N.E.2d 291, 51 A.L.R.2d 860]; *Steinberg* v. *Adams* (S.D.N.Y. 1950) 90 F.Supp. 604; Aranow & Einhorn, Proxy Contests for Control (3d ed. 1968) pp. 547-567; Brodsky & Adamski, Law of Corporate Officers and Directors (1984) § 15.20; 5 Fletcher, Cyclopedia Corporations (Perm. Ed. 1976 rev.) § 2052.3; Henn & Alexander, Laws of Corporations (3d ed. 1983) § 196; 1 Marsh's Cal. Corporation Law (1984) § 10.35; Friedman, *Expenses of Corporate Proxy Contests* (1951) 51 Colum.L.Rev. 951; Annot., Corporations-Proxies-Expenses (1957) 51 A.L.R.2d 873.)

The situation here is unusual. Given the stage of corporate proceedings at the time the litigation was commenced and the limitations of the record (see fn. 1, *ante),* no attempt can be made to characterize the nature of the dispute as involving matters of policy or personnel. We do not know which side prevailed. Most importantly, the directive for reimbursement of proxy expenses, be they incurred by Tago or the Johnsons, does not stand before us with the ex post facto corporate imprimatur bestowed by either the board of directors or the shareholders. Our task is to determine the validity of a judicial order, made in the midst of an ongoing internal dispute between competing factions, commanding that the proxy expenses of both

sides be paid out of the corporate treasury. This appears to be a question of first impression.

The trial court based its action on Corporations Code section 600, particularly subdivision (c).[3] The various provisions of section 600 deal with certain features of shareholder meetings. Subdivision (a) concerns where such meetings may be held. Subdivision (b) speaks to the timing of annual meetings, together with the mandatory and permissive agenda. Subdivision (d) involves how special meetings may be called. Subdivision (c) grants the trial court power to order an annual meeting if one has not been scheduled in the ordinary course of events. For our purposes, the heart of subdivision (c) is this sentence: "The court may issue such orders as may be appropriate, including, without limitation, orders designating the time and place of such meeting, the record date for determination of shareholders entitled to vote and the form of notice of such meeting."

■ We agree with Tago that section 600 is "concerned with the mechanical aspects of holding the annual shareholders meeting." The judicial power to "issue such orders as may be appropriate" is reasonably construed as referring to caretaking details and procedure involved in such a meeting. It cannot be construed as a license for courts to trespass upon substantive matters confided to the directors and shareholders of a corporation. Nothing in the plain language or legislative history suggests the contrary.

■ The essential feature of the trial court's action is that it entails an outsider's order for disbursement of corporate funds. The manner and

---

[3]In its entirety, section 600 provides: "(a) Meetings of shareholders may be held at such place within or without this state as may be stated in or fixed in accordance with the bylaws. If no other place is stated or so fixed, shareholder meetings shall be held at the principal executive office of the corporation.

"(b) An annual meeting of shareholders shall be held for the election of directors on a date and at a time stated in or fixed in accordance with the bylaws. Any other proper business may be transacted at the annual meeting.

"(c) If there is a failure to hold the annual meeting for a period of 60 days after the date designated therefor or, if no date has been designated, for a period of 15 months after the organization of the corporation or after its last annual meeting, the superior court of the proper county may summarily order a meeting to be held upon the application of any shareholder after notice to the corporation giving it an opportunity to be heard. The shares represented at such meeting, either in person or by proxy, and entitled to vote thereat shall constitute a quorum for the purpose of such meeting, notwithstanding any provision of the articles or bylaws or in this division to the contrary. The court may issue such orders as may be appropriate, including, without limitation, orders designating the time and place of such meeting, the record date for determination of shareholders entitled to vote and the form of notice of such meeting.

"(d) Special meetings of the shareholders may be called by the board, the chairman of the board, the president or the holders of shares entitled to cast not less than 10 percent of the votes at the meeting or such additional persons as may be provided in the articles or bylaws."

objects for which a corporation spends its money are among the most vital and sensitive of its internal affairs, entrusted to its officers, directors, and shareholders. This is an area courts do not enter absent illegality or demonstrated abuse of reasonable business judgment. (See *Beehan* v. *Lido Isle Community Assn.* (1977) 70 Cal.App.3d 858, 865 [137 Cal.Rptr. 528]; *Wanee* v. *Board of Directors* (1976) 56 Cal.App.3d 644, 649 [128 Cal. Rptr. 526]; *Marble* v. *Latchford Glass Co.* (1962) 205 Cal.App.2d 171, 178-179 [22 Cal.Rptr. 789]; *Fairchild* v. *Bank of America* (1961) 192 Cal.App.2d 252, 256-257 [13 Cal.Rptr. 491].)

The trial court paid insufficient heed to this principle. Undoubtedly the court was motivated by thoughts of basic fairness: there is undeniable appeal in treating incumbent and challenger alike. (See Aranow & Einhorn, *op. cit. supra,* at pp. 575-576; Friedman, *Expenses of Corporate Proxy Contests, supra,* 51 Colum. L. Rev. 951 at p. 958; Note, *Corporations: Reimbursement for Corporate Campaign Expenses Incurred in Proxy Fights* (1955) 43 Cal.L.Rev. 893, 903-904; *Steinberg* v. *Adams, supra,* 90 F.Supp. 604 at pp. 607-608.) The opposing considerations, however, are compelling. The costs of proxy fights do not come cheap.[4] If it is decided that the corporation is to absorb these expenses, it is fitting that that decision be made by the corporation, at least in the first instance. This is especially true if that decision awaits the ultimate outcome of the proxy fight, for the corporate decisionmaker would then be best situated to evaluate the benefit brought to the corporation by either or both sides and thus determine whether reimbursement is in the best interests of the corporation. The alternative, and the logical consequence of the trial court's action, amounts to the coerced depletion of corporate treasuries without regard for the opinion of the intended beneficiaries. (See Eisenberg, *Access to the Corporate Proxy Machinery* (1970) 83 Harv.L.Rev. 1489, 1499, 1511-1517.)

Viewed from this perspective, the overriding factor is not abstract fairness but usurpation of a corporation's control of its own money. Judicial interference is to be kept to a minimum, guided by the principle of deference previously cited. With regard to reimbursing proxy fight expenses it has therefore been accepted that a court "cannot authorize or direct such payment to be made but merely determines whether the payment by the corporation after approval by a majority of stockholders is reasonable and proper, . . ." (*Grodetsky* v. *McCrory Corporation.* (Sup. Ct. 1966) 49 Misc.2d 322, 324 [267 N.Y.S.2d 356, 359], affd. 27 App.Div.2d 646 [276 N.Y.S.2d 841]; accord 5 Fletcher, *op. cit. supra,* § 2052.3, at p. 236.)

---

[4] The trial court was advised that the expenses likely to be incurred by the Johnsons alone looked to be on the order of $75,000 to $100,000. No figure for Tago's proxy expenses appears in the record.

The record paints a vivid picture of a court struggling to bring order and fairness to a no-holds-barred, no-quarter-given dispute extending from Burlingame to New York City and involving recalcitrant parties, a parallel action in federal court, and complications caused by the Securities and Exchange Commission. In light of the preceding discussion, that portion of the preliminary injunction ordering Tago to pay all of the expenses of the impending proxy fight was unwarranted, premature, and therefore cannot stand.

## Attorneys' Fees

"It has been the traditional practice in this country for each litigant to bear his or her own attorney's fees. [Citation.] Awards of attorney's fees by courts are the exception rather than the rule. ■ Generally, a court may properly award attorney's fees only pursuant to an agreement of the parties or statutory authority. This principle is codified in Code of Civil Procedure section 1021: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .' " (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634 [150 Cal.Rptr. 461, 586 P.2d 942]; accord *Steele* v. *Gold* (1984) 150 Cal.App.3d 928, 931 [198 Cal.Rptr. 257]; *Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905, 909 [163 Cal.Rptr. 894].)

■ Much of what we have said with respect to proxy expenses is equally applicable to the trial court's order that Tago pay a percentage of the Johnsons' attorneys' fees. Although it may be arguable that Corporations Code section 600, subdivision (c) sanctions a judicial order for corporate reimbursement of proxy expenses, this indulgence cannot be extended to a comparable order for attorneys' fees. Numerous other sections of the Corporations Code establish that the Legislature has used explicit language to designate the situations in which, consistent with the general rule, an award of attorneys' fees is authorized. (See Corp. Code, §§ 800, subd. (d), 1305, subd. (e), 1501, subd. (f), 1604, 8331, subd. (j), 31302.5, subd. (a).) Such precision is conspicuously absent in section 600. It must therefore be concluded that the statutory authority invoked does not support the trial court's award of attorneys' fees. No one has ever suggested that Tago and the Johnsons have an agreement governing attorneys' fees. Accordingly, there is no legal basis for the award.

Certain comments made by the trial court raise the possibility that the award was made pursuant to its powers as a court of equity. ■

California courts have recognized that, as an exception to the general rule pronounced in Code of Civil Procedure section 1021, a corporate shareholder may be awarded attorneys' fees by a court of equity for litigation resulting in a "substantial benefit" (which may or may not be pecuniary in nature) to the corporation. (See the opinions of this court in *Mandel* v. *Lackner* (1979) 92 Cal.App.3d 747 [155 Cal.Rptr. 629]; *Mandel* v. *Hodges* (1976) 54 Cal.App.3d 596 [127 Cal.Rptr. 244]; *Knoff* v. *City etc. of San Francisco* (1969) 1 Cal.App.3d 184 [81 Cal.Rptr. 683]; *Fletcher* v. *A. J. Industries, Inc.,* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146].) It is clear from the allegations of the Johnsons' complaint that they have attempted to invoke this exception.

██ The award cannot be sustained on this theory. The substantial benefit exception is limited to "successful" plaintiffs, i.e., plaintiffs who have ultimately prevailed in the litigation. (See *Mandel* v. *Hodges, supra,* 54 Cal. App.3d 596 at pp. 620-623; *Fletcher* v. *A. J. Industries, Inc., supra,* 266 Cal.App.2d 313 at pp. 320-325.) In addition to the fact that it remains pure speculation whether a substantial benefit to the corporation is at issue (a question that would be effectively dispelled were the Johnsons to receive shareholder-approved reimbursement of their proxy expenses), no award is appropriate until this litigation is terminated. Only then can it be determined whether the Johnsons have been "successful." Until that determination has been made, any award of attorneys' fees pursuant to the substantial benefit exception is premature. (See *Braude* v. *Automobile Club of Southern Cal.* (1978) 78 Cal.App.3d 178, 187 [144 Cal.Rptr. 169].)

██ A trial court's equity powers are formidable (see *Mitchell* v. *Exhibition Foods, Inc.* (1986) 184 Cal.App.3d 1033, 1046 [229 Cal.Rptr. 535]) but must be exercised pursuant to the principle that equity follows the law. (*Lang* v. *Klinger* (1973) 34 Cal.App.3d 987, 992 [110 Cal.Rptr. 532]; *Fleming* v. *Kagan* (1961) 189 Cal.App.2d 791, 799 [11 Cal.Rptr. 737].) A court of equity cannot grant relief which the law denies. (*Sketchley* v. *Lipkin* (1950) 99 Cal.App.2d 849, 858 [222 P.2d 927]; *De Mattos* v. *McGovern* (1938) 25 Cal.App.2d 429, 432 [77 P.2d 522].) ██ As previously mentioned, the law, in the form of Code of Civil Procedure section 1021, has not yet yielded its primacy to equity. That portion of the preliminary injunction ordering Tago to pay a percentage of the Johnsons' attorneys' fees cannot be sustained.

The preliminary injunction is reversed insofar as it directs the payment of proxy expenses and attorneys' fees. The preliminary injunction is affirmed in all other respects. All other pending appeals are dismissed. For

the reasons previously discussed (see fns. 1 and 2, *ante),* each side shall bear its own costs.

Anderson, P. J., and Channell, J., concurred.

A petition for a rehearing was denied January 21, 1987.