RASCOVOR v. AMERICAN LINSEED CO.

(Circuit Court of Appeals, Second Circuit. January 12, 1905.)

No. 47.

CORPORATIONS—POWERS OF DIRECTORS—VALIDITY OF CONTRACT.

The directors of a corporation under their general and ordinary powers have authority to incur expense in notifying the stockholders of a proposed scheme of consolidation, or for exchanging the stock of the corporation for that of another, as a matter of which it is their duty to promptly and fully advise all stockholders not only in their own interest, but in that of the corporation; and, having such authority, the manner of giving such notice and the expense to be incurred therefor is a matter within their discretion, and the corporation is bound by a contract made by them for the publication of notices to stockholders setting forth the scheme, whether it is consummated or not.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error by plaintiff below to review a judgment in favor of defendant in error, who was defendant below. The cause was tried in the Circuit Court, Southern District of New York. The facts were stipulated, and at the con-

clusion of the trial the court directed a verdict for the defendant, to which exception was duly reserved. The facts sufficiently appear in the opinion.

Almon Goodwin, for plaintiff in error.

G. W. Murray, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The plaintiff sues as surviving partner of the firm of Albert Frank & Co. to recover the sum of $20,792.19, with interest, on a contract for newspaper advertising performed by said firm. The contract was made with the firm by the president and vice president of the defendant company assuming to act on its behalf in pursuance of a resolution of its board of directors. The advertisement was published in the various newspapers of eight large cities. It consisted of a letter or circular authorized by said resolution to be published, and is as follows:

"American Linseed Company,

"New York, May 20th, 1901.

"To the Stockholders of the American Linseed Company: The Board of Directors are pleased to report to the stockholders that, after mature consideration and deliberation, a most desirable arrangement has been effected for an exchange of the stock of the American Linseed Company for the stock of the Union Lead and Oil Company.

"The capital stock of the Union Lead and Oil Company, including that necessary to acquire all the capital stock of the American Linseed Company on the terms hereinafter mentioned, to be seventeen million dollars ($17,000,-000), said stock being all of one class Common Capital Stock, one hundred and seventy thousand shares (170,000), of one hundred dollars ($100) each.

"The stock of the American Linseed Company shall be deposited under the agreement—copies of which are on file with the depositaries hereinafter mentioned—to be exchanged for the stock of the Union Lead and Oil Company on the following basis or terms:

"Each share of the Preferred Stock of the American Linseed Company shall receive forty-eight dollars ($48) in the stock of the Union Lead and Oil Company.

"Each share of the Common Stock of the American Linseed Company shall receive eighteen dollars ($18) in the stock of the Union Lead and Oil Company.

"The Union Lead and Oil Company reserves the right to refuse to make such exchange unless there is deposited for such exchange two-thirds (2/3) of each class of stock of the American Linseed Company.

"The holders of large amounts of the stock of the American Linseed Company have already signified their approval of the arrangement, and your Board of Directors urge the prompt acceptance thereof by the balance of the stockholders.

"Certificates of stock, duly and regularly assigned and endorsed in blank, duly witnessed, with proper revenue stamps attached for transfer, should be deposited with the New York Security and Trust Company, No. 46 Wall Street, New York City, or the Illinois Trust and Savings Bank, City of Chicago, upon deposit of which transferable receipts will be issued, exchangeable for the stock of the Union Lead and Oil Company upon the consummation of the arrangement.

"Deposits must be made on or before the 5th day of June, 1901, after which date no deposits will be received except in the discretion of the Board of Directors of the Union Lead and Oil Company and on such terms as they may prescribe.

"By authority of the Board of Directors,

"Guy G. Major, President."

"New York, May 20th, 1901.

"To the Stockholders of the American Linseed Company: The undersigned stockholders of the American Linseed Company having carefully considered the proposed arrangement between the stockholders of the American Linseed Company and the Union Lead and Oil Company, have decided to exchange our stock as per said arrangement for the stock of the Union Lead and Oil Company.

"We believe that the consummation of the proposed arrangement will decrease expenses and lower the cost of maufacture, resulting in large net earnings applicable to dividends.

"Inasmuch as the Union Lead and Oil Company have reserved the right to refuse to make such exchange unless two-thirds (2/3) of each class of stock of the American Linseed Company is deposited, we urge the prompt deposit of your stock.

"Faithfully yours,

"[Here follow the names of 10 out of the 15 directors of the defendant corporation.]"

The scheme for exchange of stock turned out to be unsuccessful, its promoters not being able to secure the approval of the holders of the prescribed two-thirds of the stock of the defendant corporation. The Circuit Judge, in disposing of the cause by directing judgment for the defendant, stated his reasons as follows:

"The case turns upon the power of the directors to bind the corporation to the contract with the plaintiff into which they entered; in other words, whether the directors of a corporation have authority, when acting under their general and ordinary powers, to obligate the corporation for the expenses of a proposed exchange of stock by its stockholders for the stock of another corporation. Now, necessarily, such a scheme is not a corporate undertaking. It is one which wholly concerns the individual stockholders. The corporation has not received any benefit from the services which the plaintiff has performed. Individual stockholders may have received a benefit, because they have been notified of what was going on, and had an opportunity to acquiesce in it or reject it. As the proposed scheme was not one within the power of the directors, they could not bind the corporation for the expenses they incurred in carrying it out. The plaintiff had full notice of the character of the scheme when he contracted with the directors. The advertisements inserted upon their face gave him full notice; consequently he is not entitled to recover."

The case seems to be one of novel impression. The industry of counsel had failed to disclose any authority directly on the point, and we have not succeeded in finding any. The question here is not as to the expenses, generally, of a proposed exchange of stock, but only as to the cost of this particular advertisement; and as to that we are unable to concur with the Circuit Judge. It was a notification of what was going on, and, in our opinion, when it comes to the knowledge of a board of directors that some scheme is on foot to induce a majority of the stockholders to part with their stock to a rival corporation, the directors are not only authorized to advise all the stockholders thereof, but it is their duty so to do, and to give such notification promptly. The future career of the corporation itself, its increased or decreased activity—indeed, its very existence as a going concern—may depend upon whether such a scheme is or is not carried through. No one can tell in advance but what timely notice thus given to all may cause individual stockholders to bestir themselves, to get into communication with others, to procure and exchange information, and thus to organize

successful opposition to a scheme which, if it were carried on secretly with the aid of directors who favored it, and without exploitation except to such individual stockholders as lacked the knowledge or the force to organize an opposition, might result in shutting down every plant which the corporation operated, and paralyzing the very industry it was created to carry on, or at least might involve the corporation in expensive litigation to vindicate its right to continue in active business. Undoubtedly individual stockholders receive a benefit in being notified of what is going on, but, in our opinion, the corporation itself also receives a benefit in having its stockholders at all times fully advised as to everything which concerns its condition, or which may be expected to alter that condition. We would not hesitate to hold it a legitimate charge against a corporation if directors should send to every stockholder a printed copy of a report as to its condition, or even as to general conditions of the industry in which it operated, so that all might be advised as to what environment, favorable or adverse, surrounded it, in the hope that some of them might thereby be stimulated to thought and suggestion by which the corporation might itself be profited. The holding that notification of a proposed scheme such as we have here is one which the directors ought to give is determinative of this case. Whether the notice shall be long or short, in what form of words it shall be couched, whether it shall be sent by mail or advertised in newspapers are matters of detail, which should be left to the directors. Certainly the innocent party who undertakes to publish such a notice should not be mulcted because, besides giving notice of the proposed scheme, it also gives the names of individual directors who favor it, nor because it is unnecessarily verbose.

The judgment should be reversed, and the cause remanded for a new trial.