RAY L. HALL,

*vs.*

TRANS-LUX DAYLIGHT PICTURE SCREEN CORPORATION, a corporation of the State of Delaware, PERCY N. FURBER, WILLIAM T. BLACK, WILLIAM A. COPELAND, MINTON F. CRONKHITE, ROBERT L. DAINE, GEORGE H. EICHELBERGER, HAROLD P. FARRINGTON, PERCIVAL E. FURBER, LEAVITT J. HUNT, WILLIAM F. H. KOELSCH, ELLERY MANN, ARTHUR C. PAYNE, GEORGE A. SMAINIS, WILLIAM E. SNODGRASS and EDWARD WISE.

*New Castle, Feb. 15, 1934.*

*Aaron Finger,* of the firm of Richards, Layton & Finger, for complainant.

*Hugh M. Morris* and *John Biggs, Jr.,* for defendant Trans-Lux Daylight Picture Screen Corporation.

THE CHANCELLOR: The bill in this case seeks to enjoin the Trans-Lux Daylight Picture Screen Corporation from expending any money or incurring any liability in connection with a contest for proxies for use at the annual meeting of stockholders of the corporation held in May of the year 1933, or in connection with a proceeding now pending in this court for a review of the results of that meeting. The bill prays that the individual defendants, directors of the corporate defendant, account to it and be directed to pay over to it any and all sums of money heretofore paid by the corporate defendant for any of the purposes above described.

The individual defendants are non-residents and have neither appeared nor been served with process. If they should never be subjected to the jurisdiction, the accounting relief could, of course, never be afforded. The demurrer filed by the corporate defendant goes to the whole bill. But inasmuch as the accounting phase of it may never come to a head because of the absence of the parties charged with the duty to account, and inasmuch as such parties are the proper ones to object to the sufficiency of that branch of the case that is directed solely against them, the demurrer of the corporate defendant will be treated as directed solely against that portion of the bill which concerns it, viz., the right of the complainant to an injunction as prayed. *Donalson v. Investors' Realty Corporation,* 16 *Del. Ch.* 20, 139 *A.* 766; *Id.,* 16 *Del. Ch.* 214, 142 *A.* 831.

1. The first question which the demurrer presents is— to what extent may corporate funds be expended in supporting the management's side of a controversy against stockholders who are in disagreement with the management and who are seeking in a contest to elect directors to substitute their views or their control for the views and control of the present management?

Where the controversy is concerned with a question of policy as distinguished from personnel of management and the stockholders are called upon to decide it, it would seem quite clear that the incumbent directors may with perfect propriety make such expenditures from the corporate treasury as are reasonably necessary to inform the stockholders of the considerations which the directors deem sufficient to support the wisdom of the policy advocated by them and under attack; and in the same communications which the directors address to the stockholders in support of their policy they may solicit proxies in its favor. The report of the case of *Pell v. London & North Western Ry. Co.*, [1907] 1 *Ch. Div.* 5, contains discussions by the three Lord Justices who sat in the case, which very persuasively demonstrate that such expenditures are entirely proper. The underlying reason is given by them as this—that inasmuch as the stockholders are called upon to express their judgment upon the soundness of a questioned policy, it is in the interest of an intelligent decision by them that they should be advised by the responsible managers of the corporation who formulated the policy what were the considerations which induced their approval; and that it would be highly unreasonable to require that the directors should personally defray the expense incident to the performance of a duty which rested upon them to lay before the stockholders the information which is requisite for an informed decision in turn on their part. Where the question is one of a policy to be adopted, the judges in the English case just cited took the view, and very reasonably so, that the corporation was under a duty to advise the stockholders, whose approbation or disapproval was to be determinative, of the reasons for the policy's adoption, and that in such a case the directors are to be regarded as having that corporate duty laid upon them. Any expense incident and reasonably necessary to perform that duty, is an expense incurred in the interest of the corporation and therefore properly chargeable to it.

In *Rascover v. American Linseed Co.*, 135 *F.* 341, the

Circuit Court of Appeals of the Second Circuit decided that it was proper to charge a corporation with the expense of advertisements which advised the stockholders of an arrangement whereby they might exchange their stock for stock in another company provided an aggregate of two-thirds of the stock was offered for exchange. The trial court held that such advertisements were solely in the individual interest of the stockholders, that the proposed exchange was not a corporate undertaking, that the corporation had derived no benefit from the advertisements and should therefore not be required to pay for the same. The Circuit Court of Appeals conceded that in a sense the proposed exchange was a matter of concern to the stockholders in their individual capacities, but took the view also that inasmuch as, if the exchange were made, the corporation's business might be most vitally affected by being turned over for operation by another company, it was a case where the welfare of the corporation as distinct from its stockholders was at stake and, therefore, it was proper for the corporation to bear the expense of notice by advertisements to the stockholders of what was afoot and of the views of the directors with respect thereto. This case is analogous in point of principle to the English case above cited, because upon analysis it appears to be a case where the corporation incurred expenses in order that stockholders might be advised upon a question which, though it was of concern to them individually, nevertheless, according as two-thirds of them answered it one way or another, intimately touched the ultimate welfare of the corporation and so fell in the category of questions affecting corporate policy.

It is a proper use of corporate funds for a corporation to pay therefrom the costs incurred in the giving of notice by advertisement of a special meeting of stockholders, notwithstanding such notice is ampler and more expensive than would be one by mail which the by-laws call for. This was held in *Lawyers' Advertising Co. v. Consolidated Rail-*

*way, etc., Co.,* 187 *N. Y.* 395, 80 *N. E.* 199, 200, on the theory that it is in the interest of the corporation that as full an attendance of stockholders may be had as a timely notice is calculated to produce. The court in that case at one point in its opinion gave expression to a view which so far as it goes, is in harmony with the cases just cited from the English Chancery Division and the United States Circuit Court of Appeals in the second circuit. It said— "Proper and honest corporate management was subserved by widespread notice to stockholders of questions affecting the welfare of the corporation, and there is no impropriety in charging the latter with any expenses within reasonable limits which were incurred in giving sufficient notice of a special meeting at which the stockholders would be called upon to decide these questions."

The foregoing are all the authorities which have been called to my attention as in anywise bearing upon the questions which the demurrer in this case presents.

In the case of *Pell v. London & North Western Railway Co., supra,* it was conceded that the directors had not acted in their own interests or for the purpose of procuring their own re-election. Buckley, L. J., in delivering his opinion, took pains at the close thereof to say that the decision in the case then before the court constituted no authority for the proposition that directors would be justified in expending corporate funds for the purpose simply of procuring their own re-election and maintaining themselves in power. "The point here decided," he said, "is that directors *bona fide* acting in the interest of the corporation, and not to serve their own interests, are entitled and bound to inform and guide the corporators in matters affecting the corporate interests, and any expenses reasonably incurred in so doing may be borne out of the funds of the company." In *Lawyers' Advertising Co. v. Consolidated Railway, etc., Co., supra,* the Court of Appeals of New York expressly determined what Buckley, L. J., said the English case should not be regarded as denying, viz., that directors can-

not cause their corporation to bear the expense incurred in an effort to effect their own re-election in a mere contest over who should control the corporation. The New York case is strongly relied upon by the complainant as supporting his position in the instant one. I find difficulty in assigning to that case its proper value in relevancy to this one. That case dealt with four notices published in newspapers. The first of the notices was authorized by the directors and the other three were not. The court held that the cost of the first was chargeable to the corporation and the other three were not. As to the other three, it was said by way of dictum that even if they had been authorized, the corporation should not be called upon to pay for them. This was for the reason that it appeared to the court that the notices were published solely in the interest of the directors to secure their own re-election over the opposition of a faction that was contesting for control.

I gather the principle from these authorities to be that where reasonable expenditures are in the interest of an intelligent exercise of judgment on the part of the stockholders upon policies to be pursued, the expenditures are proper; but where the expenditures are solely in the personal interest of the directors to maintain themselves in office, expenditures made in their campaign for proxies are not proper.

It must be apparent that difficulty is often bound to arise when it is sought in such cases as this to draw the line between what is proper and what is improper. It does not appear to me to be tenable to say that when the formal issue is whether or not certain persons shall be elected, it must be conclusively considered that no question of policy is involved, that only the personal interests or ambitions of individuals are at stake and that therefore no corporate funds may be expended in furtherance of one side to the contest. A question of policy which concerns very intimately the future of the corporate business may turn upon the particular personnel of the directors and

officers. Indeed it often happens in practice as it necessarily must that questions of policy come up not as abstract propositions which are referred to the stockholders for a yes and no vote, but in the form of whether the directors who stand for the given policy shall be re-elected to office. In the English case before cited of *Pell v. London & North Western Railway Co.*, I infer, though the report of the case is not clear with respect to the matter, that the question of policy came up in that very way. It is impossible in many cases of intracorporate contests over directors, to sever questions of policy from those of persons. The two are often inextricably blended. What difference in principle can it make between laying before stockholders reasons for answering a referendum in the abstract upon whether a certain policy shall be pursued, and asking them to vote for one set of persons who stand for a certain policy and will promote it, and against another set who are opposed to the policy and will defeat it? I can see none. I quite agree with the proposition that if all that is at stake is the ambition of the "ins" to stay in, the corporation should not be called upon to pay for the expense of their campaign to persuade the voting stockholders to rally to their support.

But if the so called "ins" are engaged in answering attacks against their re-election because of a position they have taken upon some matter of important concern to the corporation, I am unable to see why they should not be permitted to make the same sort of expenditure from the corporate funds in defense of their offices as they would if their policy were under attack in a manner entirely disassociated from individuals.

The fact, therefore, that in this case the expenditures were made in the interest of disseminating information to the stockholders in answer to a faction that was campaigning to oust the existing directors at a stockholders' annual meeting and in an endeavor to secure proxies in favor of the retention of the directors, is not necessarily condemnatory of the expenditures as improper. The nature of the

contest must be looked at to see if it is one where it can be said that only the selfish desires of incumbent directors to hold on to their positions are at stake. If so, the persons who seek simply to procure their own re-election should pay the bills contracted in such a purely personal enterprise.

Examining the bill in this case, and the exhibits attached thereto, it appears that the principal item of contention between the incumbent directors on the one hand and those who sought to oust them on the other, was the matter of a merger agreement between the defendant corporation and another corporation engaged in the same line of business known as the News Projection Corporation. Other points of controvery were of course brought forward. But the matter of the merger was certainly one that deserves to be described as one of very considerable moment to the corporation. It is quite similar in its aspect of importance to the corporation, to the proposition reported in *Rascover v. American Linseed Co., supra,* in which case the Circuit Court of Appeals held that corporate expenditures made to lay the proposition before the stockholders were entirely proper.

The merger agreement in the instant case had been agreed upon by the boards of the two corporations, and then the News Projection Corporation undertook to withdraw from it. A merger on different terms, agreeable to the News Projection Corporation, was proposed by a committee in opposition to the one which the management had negotiated. The incumbent directors of the defendant corporation deemed the new merger terms unfair and refused to accept them. Those who sought to induce the stockholders to refuse to re-elect the existing directors apparently think that the latter were unwise in their decision. Now then, at that point, a question of policy, quite distinct as a matter of corporate interest, was presented for consideration of the stockholders and it is reasonable to say that according as the stockholders voted for or against the re-election of the directors, that question of policy would be determined.

In this view of the matter, I am of the opinion that the directors who presumably, in the absence of allegations of fact showing the contrary, acted in a *bona fide* way in formulating the policy for the corporation, were entitled to have the corporate treasury bear the expense of laying before the stockholders the facts and considerations which were pertinent to an intelligent decision of the question at issue. I am aware that other items of complaint were made against the directors by the faction which sought their defeat. But it appears to me from an examination of the exhibits attached to the bill that the question of the merger was very much at the bottom of the agitation against the directors, if it does not stand forth as the real point at issue between them and their critics. As to the merger controversy, I am of the opinion that reasonable expenditures from the corporation's treasury were properly made in laying before the stockholders the management's views of it. If other matters were involved with it, I cannot see how there was any impropriety in the directors' answering those matters at the same time they were answering their critics upon the larger question of policy which the merger presented.

In addition to the merger question, there was another one which might be designated as an important question of policy, which was raised against the directors and was the subject of some discussion in the letters sent to the stockholders. I refer to the question of whether the directors should have caused the corporation to rid itself of the shares of stock of a wholly owned subsidiary corporation known as Trans-Lux Movies Corporation, by distributing said stock as a dividend. What has been heretofore said with respect to the propriety of the directors' action in advising the stockholders upon the merger matter, might also be said with respect to this one. I refrain, however, in the interest of brevity from elaborating upon that particular feature of the case.

If in this case it appeared that the directors incurred

the expense solely in their own individual interests in order to secure their re-election, the bill might present itself in a different light from what it does. But the bill as I read it, together with its exhibits, does not show such a case.

2. Should the corporation be enjoined from expending any funds in connection with the proceeding instituted in this court for a review of the election? This question stands on a footing somewhat different from the one heretofore discussed. While in the review proceedings themselves nothing is to be presumed as to the correctness of the result of the election, yet in a collateral proceeding such as this, I consider it reasonable to say that the result of the election as duly declared at the close of the meeting has a presumption of validity in its favor. If so, the question is whether the corporation has a right to use corporate funds to maintain the results of action which the stockholders took in their duly constituted statutory assembly. I am of the opinion that it has such right. It seems to me to be beyond reason to say that the individuals whom the stockholders are presumed properly to have chosen for the directors of their corporation, should pay out of their own pockets the expense necessary to sustain the titles which the stockholders conferred upon them. It is a matter of corporate concern that the decision of the stockholders upon a question which the statute refers to them for determination should be defended. Such a question is not one between persons who are contesting to get in office. It is a question on the one hand between the corporation whose stockholders have, so far as yet appears, placed persons in office as the managers of their corporation, and, on the other, an individual who seeks to have the presumptive wish of the corporation, as expressed by its stockholders, overthrown.

The demurrer will be sustained.