[Civ. No. 33512. First Dist., Div. Four. Apr. 10, 1974.]

MARVIN BRAUDE et al., Plaintiffs and Appellants, v. JOSEPH E. HAVENNER et al., Defendants and Respondents.

## COUNSEL

Alvin S. Kaufer, Robert T. Belber, James A. Hamilton, Carlyle W. Hall, Jr., Mary D. Nichols, John R. Phillips, Brent N. Rushforth and Fredric P. Sutherland for Plaintiffs and Appellants.

Adams, Duque & Hazeltine, James S. Cline and Bruce A. Beckman for Defendants and Respondents.

## OPINION

**CHRISTIAN, J.**—Appellants Marvin Braude and James Ruddick brought this action under Corporations Code section 2236 et seq., to set aside an election in which respondents Toll, King, and Milligan were selected as members of the Board of Directors of the Automobile Club of Southern California. Appellants attacked the validity of proxies executed by members of the club and sought a declaration of rights and equitable relief. A stipulation of facts, entered into by the parties, was supplemented by testimony taken in a nonjury trial. The court gave judgment voiding some proxies but upholding the results of the election; the present appeal followed.

The Automobile Club of Southern California is a nonprofit corporation with more than one million members. The club extends to its members services related to motoring, such as travel information and emergency road service. It also participates in public activity concerning legislation that may affect motoring. Through its board of directors the club controls the Interinsurance Exchange of the Automobile Club of Southern California, an entity which provides insurance to some members of the club. The insurance exchange has assets of over $200 million. The club is governed by its 11-member board of directors; the board elects officers who manage the club business, appoint committees, adopt rules and regulations to control the transaction of business, and amend the club's bylaws.

The Automobile Club of Southern California worked against a proposition on the November 1970 general election ballot which would have permitted the application of gasoline tax revenue to mass transit purposes. This prompted Braude to seek election to the board. Braude was nominated at the annual members' meeting of the club held on February 22, 1971. Present at the meeting were 107 active members; in addition, 732,757 members were represented by proxy. Respondents Havenner,

Lowe, and Farrand held 728,143 of the proxies, obtained as follows: 382,045 were obtained "over-the-counter" from new members; 83,863 were obtained by mail from new members; and 262,235 were obtained from continuing members. Braude was defeated in the election; respondents King, Toll, and Milligan were elected directors. The trial court held invalid the 83,863 proxies obtained by mail from new members of the club, but it upheld the validity of the other proxies and of the election.

▮ The contested terms of office have expired during the pendency of this appeal. We have concluded, however, that the appeal should not be dismissed as moot; it involves "the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, . . ." (*People* v. *West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 468 [89 Cal.Rptr. 290]; see also 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, pp. 4426-4428.)

As a nonprofit corporation, the Automobile Club of Southern California is regulated by the General Nonprofit Corporation Law.[1] The General Corporation Law (§§ 100-6804) applies to nonprofit corporations except regarding matters governed by the General Nonprofit Corporation Law (§ 9002).

Because nonprofit corporations generally do not issue stock, the ultimate governing interest rests with members rather than with shareholders. (See 2 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1973) p. 759.) An equitable remedy has been provided for a member who wishes to challenge a corporate election. (See, e.g., *Columbia Engineering Co.* v. *Joiner* (1965) 231 Cal.App.2d 837, 842-849 [42 Cal.Rptr. 241].) The code provides very broadly that "[t]he court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, and direct such other relief as may be just and proper." (§ 2238.) ▮ In determining a challenge to a corporate election the court should consider all factors bearing on the validity of the questioned election and give effective direction to the relief required. (*Lawrence* v. *I. N. Parlier Estate Co.* (1940) 15 Cal.2d 220, 227 [100 P.2d 765].) Thus, the scope of inquiry is not limited to technical and procedural questions involved in the corporate election. (*Columbia Engineering Co.* v. *Joiner, supra,* 231 Cal.App.2d at p. 844; see 2 Ballantine & Sterling, Cal. Corporation Laws, *supra,* § 196, p. 386.)

▮ Appellants contend that proxies obtained from applicants for mem-

---

[1]Corporations Code sections 9000-9802. All code citations hereafter are to the Corporations Code unless specified otherwise.

bership in the club are void as having been taken prematurely. Under the bylaws applications for membership are "subject to approval and acceptance by the Board of Directors or any person or persons designated by them." Section 2225 states that a person entitled to vote may do so by an agent authorized by a written proxy.[2] Therefore (the argument runs) applicants who signed proxies before they were accepted as members were not then "entitled to vote" and not therefore authorized to give a proxy. Appellants' interpretation of section 2225 is strained. There is no requirement that only those already entitled to vote may execute proxies. To execute a proxy is to appoint an agent for a special purpose. (2 Ballantine & Sterling, Cal. Corporation Laws, *supra,* § 192 at p. 371.) An agent may be appointed before the happening of an event which may call for him to exercise his powers as agent. The trial court acted correctly in determining that there was no reason to prevent a prospective member of the club from executing a proxy when he applies for membership.

Persons who applied by mail for membership received an application form accompanied by an attachment which requested the applicant to "sign both sides." One side of the application was an application form; the other was a proxy. The trial court concluded that the proxies obtained in this manner were invalid because the attachment suggested that the applicant was required to execute both the application and the proxy if he wanted to join the club. That determination was sound; it is not contested by respondents.

 Proxies were obtained over-the-counter from applicants as follows: When a person inquired about membership at a field office of the club he was given a brochure, and the services outlined in the brochure were explained. If a membership was desired, the applicant was given the same form used in postal transactions, but the attachment requesting the applicant to sign both sides was not used. Applicants were asked to sign the proxy, and were not told about the effect of the proxy unless they specifically inquired. The club's field representatives were instructed to advise any applicant who questioned the proxy "that the proxy is a device used by many organizations which conduct their business through an elected Board of Directors to facilitate the conducting of the business of the organization when members can't or don't wish to attend meetings," and that the signing of a proxy is not required. The trial court concluded that proxies obtained over-the-counter were not invalid. Substantial evi-

[2]Corporations Code section 2225: "Every person entitled to vote or execute consents may do so either in person or by one or more agents authorized by a written proxy executed by the person or his duly authorized agent and filed with the secretary of the corporation."

dence supports that conclusion. The proxy form unambiguously states that it creates a voting agency, and there was evidence that the club's field representatives, in answer to questions, disclosed that it was not necessary to execute a proxy in order to apply for membership. (Cf. *Wyatt* v. *Armstrong* (1945) 186 Misc. 216 [59 N.Y.S.2d 502, 505].)

The procedure for obtaining proxies from continuing members is also attacked by appellants. Each year a proxy solicitation is sent to each member whose proxy has expired or is about to expire. The trial court held that the procedure was not objectionable. We do not examine the fairness of the proxy request which is under attack; it has been superseded by a new form which is not in issue in this appeal.

Appellants have launched a broad attack on the fairness of the club's election practices. First, it is contended that it was improper for the club to pay the management's expenses in soliciting proxies for the board of directors. In general, corporate funds and proxy machinery may be used for management's solicitation of proxies if the proxies are needed to conduct ordinary corporate business, such as obtaining a quorum and voting on normal, uncontested business matters. (*Rosenfeld* v. *Fairchild Engine & Airplane Corp.* (1955) 309 N.Y. 168, 172-173 [128 N.E.2d 291, 292-293, 51 A.L.R.2d 860]; see Eisenberg, *Access to the Corporate Proxy Machinery* (1970) 83 Harv.L.Rev. 1489, 1495-1496.) In the case of contested elections, it is said that corporate funds may be used if a policy issue is at stake as opposed to a strictly personal power contest. (*Rosenfeld* v. *Fairchild Engine & Airplane Corp., supra,* 309 N.Y. at p. 173 [128 N.E.2d at p. 293].) The rule is uncertain in application because every contest involves or can be made to involve issues of policy. (Eisenberg, *Access to the Corporate Proxy Machinery, supra,* 83 Harv.L.Rev. at pp. 1497-1498.)

In any event, management's solicitation is not without limit. Incumbent directors may not use the corporate proxy machinery solely to perpetuate themselves in office. (Eisenberg, *Access to the Corporate Proxy Machinery, supra,* 83 Harv.L.Rev. at p. 1495; see, e.g., *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (1934) 20 Del.Ch. 78 [171 A. 226, 228-229]; cf. *Burnett* v. *Banks* (1955) 130 Cal.App.2d 631, 634 [279 P.2d 579] [no director may perpetuate himself in office by refusing to call an election].) Other limits on the board's use of the corporate proxy machinery are inherent in each director's fiduciary obligations to the members or shareholders. (*Rosenfeld* v. *Fairchild Engine & Airplane Corp., supra,* 309 N.Y. at p. 173 [128 N.E.2d at p. 293].)

Other aspects of the process employed in the election of directors are attacked. The club's bylaws provide that a nominating committee appointed by the club's president is to prepare a list of nominees for director which contains as many names as there are vacancies on the board. The list is not required by the bylaws to be disclosed other than by publication once in a newspaper of general circulation prior to the annual meeting. Active members may nominate other candidates at the annual meeting. Appellants contend that the election was unfair because the club's bylaws permit members to nominate candidates for director only at the annual meeting, while the bylaws permit notice of the annual meeting to be given in an ineffective manner. Although the nominating committee is required to act at least 15 days prior to the annual meeting, candidates nominated by club members may not be put forward until the annual meeting has been convened. ■ Corporations have no power to create bylaws that are unreasonable in their practical application (*People's Bank v. Superior Court* (1894) 104 Cal. 649, 652 [38 P. 452]); bylaws seemingly in compliance with statutory provision are invalid if they are unreasonable. (*Id.*; *Haynes* v. *Annandale Golf Club* (1935) 4 Cal.2d 28, 30 [47 P.2d 470, 99 A.L.R. 1439].) By permitting nominations by members only at the annual meeting, the club's bylaws restrict the members' right to nominate, and hence elect, the directors. (See *Com.* ex rel. *Gallagher* v. *Knorr,* 21 Pa.Dist.R. 784 [held similar bylaw unreasonable], discussed in *Matter of Farrell* (1923) 205 App.Div. 443 [200 N.Y.S. 95, 97], affd. 236 N.Y. 603 [142 N.E. 301].)

■ In its findings of fact the trial court determined that "considering all of the circumstances, the effect of defendant club's solicitation of proxies, failure to give any more than minimal legal notice of the meeting, failure to disclose nominees to be voted upon at the meeting, and the impracticality of any third person['s] being able to communicate effectively with the members of the club, all have the necessary result of perpetuating directors in office without affording to the members a fair opportunity to express their vote for other candidates if that is what a given member desires to do." That view of the situation was directly responsive to the issues posed by appellants' broad-scale attack on the club's electoral procedures. It was consistent with, indeed virtually compelled by, uncontradicted evidence.

The findings also set out several circumstances which, as the court reasonably determined, indicated that it would be "inequitable and unfair to the club, to the best interests of the club, and to the majority of the members of the club to set aside the election . . ." which had been the primary target of attack in this action. It cannot be said that it would have been an abuse of discretion to abstain from annulling the past election

while making provision to prevent the continued employment of electoral procedures which resulted in "perpetuating directors in office without affording to the members a fair opportunity to express their vote for other candidates." The judgment, however, is inconsistent with the total effect of the findings in that it failed to grant relief from the effective exclusion of real exercise of the franchise by club members which was found to have occurred. (See Corp. Code, § 2238.)

Respondents have represented to this court, by material not part of the record on appeal, that some deficiencies in the electoral procedures discussed above have been corrected. We make no determination concerning the merits of those changes; the trial court can more appropriately consider those matters.

The judgment is reversed with directions to enter a new judgment determining that the electoral procedures which led to the selection of respondent directors were unfair and unlawful. The trial court will retain jurisdiction as a court of equity to compel respondents to put into effect such new electoral process as the court may consider just and proper. The trial court may take further evidence before determining whether to approve or order any specific electoral plan.

Caldecott, P.J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 10, 1974, and the judgment was modified to read as printed above.