[Civ. No. 49807. Second Dist., Div. Four. Mar. 2, 1978.]

MARVIN BRAUDE et al., Plaintiffs and Appellants, v.
AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA et al.,
Defendants and Appellants.

## COUNSEL

Alvin S. Kaufer, James A. Hamilton, Carlyle W. Hall, Jr., John R. Phillips, Brent N. Rushforth and Fredric P. Sutherland for Plaintiffs and Appellants.

Beardsley, Hufstedler & Kemble, Seth M. Hufstedler, John Sobieski, John P. Olson, Adams, Duque & Hazeltine, James C. Cline and Bruce A. Beckman for Defendants and Appellants.

## OPINION

**ALLPORT, Acting P. J.**—These proceedings were originally instituted by Marvin Braude and James Ruddick (Braude) pursuant to Corporations Code section 2236 et seq. to set aside an election of members of the board of directors of the Automobile Club of Southern California, a nonprofit corporation (Club). Mounting a broad attack upon the fairness of the Club's procedures for election of directors with particular

emphasis being placed upon the fairness and validity of the use of proxies, Braude was eventually successful in obtaining a judgment condemning the Club's bylaws insofar as they provide for the nomination and election of its board of directors.

A first trial of the matter resulted in a judgment upholding the results of the challenged election without any determination being made concerning the fairness of the Club's electoral practices. On appeal this court, in *Braude* v. *Havenner*, 38 Cal.App.3d 526 [113 Cal.Rptr. 386], determined that the issue as to the validity of the election itself was moot because the contested terms of office expired during pendency of that appeal, but refused to dismiss the appeal since it involved "the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, . . ." The appellate court then reversed the judgment with directions to "enter a new judgment determining that the electoral procedures which led to the selection of respondent directors were unfair and unlawful" and ordering the trial court to "retain jurisdiction as a court of equity to compel respondents [Club] to put into effect such new electoral process as the court may consider just and proper."

Following remand and a second trial, findings of fact and conclusions of law were made and a judgment rendered thereon purporting to comply with the foregoing appellate mandate and from which the instant appeal is taken.[1] Braude cross-appeals from certain aspects of the judgment contending (1) the portion thereof concerned with the required number of nominating signatures is onerous and should either be eliminated entirely or the number reduced,[2] and (2) the restriction preventing members from voting for a full slate of directors must not be condoned.[3]

[1]The second judgment was predicated upon a consideration of bylaws voluntarily revised by the Club after rendition of the original judgment and which are the subject of the instant appeal.

[2]This provision of the judgment reads as follows: "Any otherwise qualified member who has secured signatures of master members aggregating one-tenth of one percent of the total number of master members of the Auto Club since the date of the last election and who has complied with the other provisions of the By-Laws of the Auto Club shall be a duly nominated candidate for election as a director." According to the trial court's finding this would have amounted to 1,300 based on the then total number of master members as of December 31, 1975.

[3]This provision of the judgment reads as follows: "It is not necessary to fair and lawful election procedures to require that the entire Board be elected at the first meeting at which the new election rules are implemented. The present directors of the Auto Club may continue to serve until the expiration of their current respective terms."

## Contentions

It is contended by the Club on appeal that the judgment should be reversed with directions to approve the existing bylaws without any award of attorney's fees and by Braude, on cross-appeal, that the judgment be affirmed except as to the requirement of nominating signatures and the restriction against voting for a full slate of directors.

## Discussion[4]

We perceive the argument in support of reversal to be that the court below exceeded its authority when, at the request of two members, it directed a rewrite of otherwise reasonable corporate bylaws substituting such a minorities judgment for that of the board of directors as to the type of electoral system best suited to the interests of the corporation. Specifically it is claimed that denial of the use of proxies in the election of directors is in violation of law.

■ We see no merit in the Club's general attack on the authority of the trial court to direct a rewrite of the bylaws in this case. That court was expressly mandated by this court in *Braude* v. *Havenner, supra,* 38 Cal.App.3d 526, to retain jurisdiction as a court of equity and compel the Club to put into effect such new electoral processes as the court considered just and proper. In *Braude,* it was said at page 530: "Because nonprofit corporations generally do not issue stock, the ultimate governing interest rests with members rather than with shareholders. (See 2 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1973) p. 759.) An equitable remedy has been provided for a member who wishes to challenge a corporate election. (See, e.g., *Columbia Engineering Co.* v. *Joiner* (1965) 231 Cal.App.2d 837, 842-849 [42 Cal.Rptr. 241].) The code provides very broadly that '[t]he court may determine the person entitled to the office of director or may order a new election to be held or appointment to be made, and direct such other relief as may be just and proper.' (§ 2238.) In determining a challenge to a corporate election the court should consider all factors bearing on the validity of the questioned election and give effective direction to the relief required. (*Lawrence* v. *I.*

---

[4]Since no attack is made upon the findings of fact themselves or the sufficiency of the evidence to support them, we shall endeavor to determine, as a matter of law, the issues as we have been able to visualize them. Our task in this respect has been rendered difficult by the Club's failure to make the concise statement of its contentions and of the issues as contemplated by rules 13 and 15 of California Rules of Court. Braude offers some assistance in this respect by stating his concept of the "issues" at pages 31-32 of his brief.

*N. Parlier Estate Co.* (1940) 15 Cal.2d 220, 227 [100 P.2d 765].) Thus, the scope of inquiry is not limited to technical and procedural questions involved in the corporate election. (*Columbia Engineering Co.* v. *Joiner, supra,* 231 Cal.App.2d at p. 844; see 2 Ballantine & Sterling, Cal. Corporation Laws, *supra,* § 196, p. 386.)"

Once the decision in *Braude* became final, the trial court acted properly in undertaking to put a just and fair electoral process into effect in this case. Insofar as it can be said that the trial court exceeded its jurisdiction by undertaking to rewrite the Club's bylaws, as orally argued by counsel for the Club, we would express disapproval of such judicial interference in the internal affairs of the corporation. However, we do not so construe the action taken. In this respect the judgment provides: "Each election for directors to the Auto Club hereafter will be conducted substantially in the manner set forth herein, unless and until election procedures are changed by vote of the membership specifically authorizing such changes. Attached hereto as Appendix II are the specific by-law changes which this Court finds necessary to carry out its findings and conclusions, and which this Court hereby orders the Board of Directors of the Auto Club to adopt at the next regular monthly meeting of the Board of Directors. Said by-laws may subsequently be amended provided any such amendment is consistent with these findings and conclusions and does not favor incumbent directors in the election process."

The "election procedures" which follow consist of guidelines which were deemed necessary by the court to insure that bylaws adopted by the Club would meet the standard enunciated in *Braude, supra,* wherein it is said at pages 532-533:

"In any event, management's solicitation is not without limit. Incumbent directors may not use the corporate proxy machinery solely to perpetuate themselves in office. (Eisenberg, *Access to the Corporate Proxy Machinery, supra,* 83 Harv.L.Rev. at p. 1495; see, e.g., *Hall* v. *Trans-Lux Daylight Picture Screen Corp.* (1934) 20 Del.Ch. 78 [171 A. 226, 228-229]; cf. *Burnett* v. *Banks* (1955) 130 Cal.App.2d 631, 634 [279 P.2d 579] [no director may perpetuate himself in office by refusing to call an election].) Other limits on the board's use of the corporate proxy machinery are inherent in each director's fiduciary obligations to the members or shareholders. (*Rosenfeld* v. *Fairchild Engine & Airplane Corp., supra,* 309 N.Y. at p. 173 [128 N.E.2d at p. 293].)

"Other aspects of the process employed in the election of directors are attacked. The club's bylaws provide that a nominating committee appointed by the club's president is to prepare a list of nominees for director which contains as many names as there are vacancies on the board. The list is not required by the bylaws to be disclosed other than by publication once in a newspaper of general circulation prior to the annual meeting. Active members may nominate other candidates at the annual meeting. Appellants contend that the election was unfair because the club's bylaws permit members to nominate candidates for director only at the annual meeting, while the bylaws permit notice of the annual meeting to be given in an ineffective manner. Although the nominating committee is required to act at least 15 days prior to the annual meeting, candidates nominated by club members may not be put forward until the annual meeting has been convened. Corporations have no power to create bylaws that are unreasonable in their practical application (*People's Bank* v. *Superior Court* (1894) 104 Cal. 649, 652 [38 P. 452]); bylaws seemingly in compliance with statutory provision are invalid if they are unreasonable. (*Id.*; *Haynes* v. *Annandale Golf Club* (1935) 4 Cal.2d 28, 30 [47 P.2d 470, 99 A.L.R. 1439].) By permitting nominations by members only at the annual meeting, the club's bylaws restrict the members' right to nominate, and hence elect, the directors. (See *Com.* ex rel. *Gallagher* v. *Knorr,* 21 Pa.Dist.R. 784 [held similar bylaw unreasonable], discussed in *Matter of Farrell* (1923) 205 App.Div. 443 [200 N.Y.S. 95, 97], affd. 236 N.Y. 603 [142 N.E. 301].)"

The fact that the trial court herein again retained jurisdiction in the judgment to resolve further disputes supports our conclusion that the Club remained free to adopt its own bylaws as long as they provided for a fair electoral process.

We now turn to what we consider to be the fundamental issue on this appeal. In essence the judgment on retrial provided that "[n]o proxies may be used to vote in any election for the Board of Directors since a fair election or vote of the members cannot result; . . ." With respect to this the Club argues: "In abolishing proxies in elections for directors for the Auto Club, the trial court has ignored the authority of the California Corporations Code which gives shareholders or members of California corporations *the right or option to vote by proxy.* California Appellate Courts have approved the validity of bylaw provisions providing for proxies, and have stressed that the shareholders' or members' right to vote by proxy cannot be abridged in any way. . . . [¶] The trial court's judgment does not simply attack the manner in which the Auto Club

incorporated proxy provisions into its electoral procedures. Instead, the court rejected the concept of a *proxy system*. This judgment therefore violates the letter and spirit of the provisions set forth above. . . . The Court did not have the authority to reject the entire system."

We hasten to point out at the outset that the judgment now under attack does not reject the concept of a proxy system in corporate elections as suggested by the Club. On the contrary it impliedly authorized proxy voting by providing in paragraph 7 as follows: "Defendant Auto Club must adopt election procedures which provide each candidate with a reasonable opportunity and chance (a) to be nominated, (b) to make his candidacy, his qualifications and his reasons for seeking office known to the voting members, (c) to solicit proxies or votes, and (d) to be elected by an election procedure which does not operate in favor of any one candidate or group of candidates."

Presumably the trial court had in mind the use of proxies as "needed to conduct ordinary corporate business, such as obtaining a quorum and voting on normal, uncontested matters" as opposed to their use in a "strictly personal power contest." (See *Braude* v. *Havenner, supra,* 38 Cal.App.3d 526, 532.) In fact this court in *Braude* recognized and approved the use of properly solicited proxies except when used by incumbent directors "to perpetuate themselves in office." (P. 532.)[5] Insofar as the judgment in the instant case recognizes and authorizes use of the proxy system, it cannot be said to be violative of Corporations Code sections 9402, subdivision (d), or 9601. While the use of proxies is authorized by the latter section, the manner of voting and the use of proxies are proper subjects of the bylaws. Nevertheless, the fairness and legality of the by-laws in this respect is subject to review by the courts. (Corp. Code, § 709.)

In the instant case the trial court made extensive findings relative to the solicitation and use of proxies insofar as their use was involved in the election of directors. A portion thereof is as follows:

"25. The unvarying election as directors of those nominees chosen by the nominating committee, and the lack of any other nominees has been contributed to, at least in part, by each of the following factors:

---

[5]The opinion in *Braude* is somewhat unclear where at page 532 the court discusses this subject. It is difficult to say exactly where the statement of appellant's contention ceases and the holding of this court begins. We have concluded that all after the words "In general" on this page is the court's answer to the proxy argument.

"(a) The existing procedures for nomination of candidates;

"(b) The lack of reasonable means for master members seeking election to the Board of Directors to communicate with other master members;

"(c) The inability of master members other than those who are members of the Board of Directors or who are employed by the Auto Club to have access to the proxy machinery heretofore used by the Auto Club in connection with the election of directors;

"(d) The existence of proxies held by proxy holders appointed by the Auto Club, which proxies are intended to be and have been voted for nominees of the nominating committee;

"(e) The use by the Auto Club of its own funds, employees, records and assets to solicit proxies, while denying such use to others seeking or who might desire to seek nomination.

"By reason of the foregoing, the master membership has been deprived of any fair or effective opportunity to participate influentially in the choice or selection of candidates for director or to vote for candidates for directors other than those nominated by the nominating committee.

"26. There is no reasonable means presently provided by which a petition candidate may solicit proxies or votes except at his own expense.

"27. The election procedure followed by the Auto Club is unfair and unlawful."

These findings and others support that portion of the judgment wherein proxy voting for directors under the revised bylaws is condemned as being unfair and unlawful. The judgment itself demonstrates a studied effort by the trial court to remedy a fatal defect found to exist in the nominating and voting procedures by suggesting an approved method by which the entire membership may participate in the vital function of electing its board of directors. ■ However, in forbidding all use of proxies in the election of directors, the judgment is in error. In essence that court determined that, under the voluntary revision of the by-laws, the use of proxies in electing directors continued to be unfair and that, unless and until the by-laws are further revised to provide a method for the proper solicitation of proxies, their use will not be condoned.

*Braude* v. *Havenner, supra,* suggests that any further revision of the by-laws providing for the election of directors by use of the proxies must be given scrutiny by the trial court to assure compliance with the concepts of fairness discussed therein. Our decision to again reverse the judgment compels a further revision of the existing bylaws in an effort to provide for a fair method of electing directors which includes the use of proxies. It is hoped that further bylaw revision, embodying such of the trial court's guidelines as are necessary, will be presented forthwith and will enable that court to review the matter again and, once and for all, terminate its continuing jurisdiction in this case by giving approval to a fair and legal method for the election of directors satisfactory to both management and membership.

■ A further point requires our attention. The judgment provides for payment of attorney's fees for services rendered by counsel on behalf of all of the members of the Club. In this connection the trial court found that the action conferred substantial benefits upon the Club and its members and therefore awarded fees. We believe that any award of attorney's fees under the so-called substantial benefit doctrine of *Fletcher* v. *A. J. Industries, Inc.,* 266 Cal.App.2d 313, 320 [72 Cal.Rptr. 146], is, to say the least, premature. Although the judgment poses the probability that valuable rights may be preserved to members and that substantial benefits may eventually be conferred on the membership, the nature and extent of rights preserved and the benefits conferred can only be determined and assessed when the litigation is finally terminated. The status of the matter renders any attempt to bring the allowance of attorney's fees within any exception to the general rule of Code of Civil Procedure section 1021 not only tenuous but premature at this time.

We have considered Braude's cross-appeal and find nothing presented in his one and one-half page brief in support thereof which demands further attention by this court.

The stay of proceedings previously ordered by this court on December 9, 1976, is continued in effect and the judgment is reversed insofar as it orders that no proxies may be employed in the election of directors and awards attorney's fees.[6] The cause is remanded with directions for the

---

[6]We note that the judgment provides that the next annual election for directors be held in accordance with the procedures set forth in the judgment and that the trial court shall retain jurisdiction for the purpose of resolving further disputes to be encountered in the nominating or electing of directors.

trial court to continue its retention of jurisdiction as a court of equity to compel respondents to put into effect a fair and legal method by which properly obtained proxies may be used in the election of directors in accordance with the views expressed herein and, at the appropriate time, to once again consider the award of attorney's fees. The trial court may take further evidence and conduct such additional proceedings as deemed necessary to implement its final judgment in this matter. Each party to bear their and its own costs on this appeal.

Hanson, J., concurred.

BEACH, J.—I concur in that part of the judgment and that part of the majority opinion which reverses the trial court's judgment that (a) declares proxies may not be used in the election of directors and (b) awards attorney's fees. However, in other respects I believe that the language of the majority opinion, as well as the trial court, too liberally interprets the decision and holding of *Braude v. Havenner,* 38 Cal.App.3d 526, 529 [113 Cal.Rptr. 386].

The first part of the judgment of the Court of Appeal in *Braude v. Havenner, supra,* 38 Cal.App.3d 526, 534, says: "The judgment is reversed with directions to enter a new judgment determining that *the electoral procedures which led to the selection of respondent directors* were unfair and unlawful. . . ." (Italics added.) The "electoral procedures" referred to are described in the opinion as (1) "the effect of defendant club's solicitation of proxies," (2) "failure to give any more than minimal legal notice of the meeting," (3) "failure to disclose nominees to be voted upon at the meeting, and" (4) "the impracticality of any third person['s] being able to communicate effectively with the members of the club . . . ." (*Braude v. Havenner, supra,* 38 Cal.App.3d at p. 533.)

The bylaws which the court determined caused these four infirmities have been changed, and the specific defects removed. The bylaws in effect at the time of the second trial were different than those which gave rise to or allowed the procedures which the appellate court ordered be declared unfair and invalid.

After obediently declaring the previous bylaws invalid, the only remaining issue before the trial court was the extent of the court's

authority under the order to retain equitable jurisdiction and to take evidence if necessary before determining to approve or order any specific electoral plans. It is in this respect that the holding of *Braude* v. *Havenner* should be narrowly interpreted and strictly limited. It is at this point that I believe the language of the majority in the present case adopts too broad an interpretation. We are aware that both the trial court and this panel of the Court of Appeal are bound by the law of the case and the determination of questions of law in *Braude* v. *Havenner, supra*, 38 Cal.App.3d 526, *People* v. *Shuey*, 13 Cal.3d 835 [120 Cal.Rptr. 83, 533 P.2d 211]. It follows that we cannot say and do not say that the trial court erred in retaining jurisdiction and considering the matter anew as a court of equity. However, in directing the trial court to compel respondents to put into effect such new electoral processes "as the court may consider just and proper," the appellate court used language which might be subject to misinterpretation. That language cannot be interpreted to mean that the trial court thereby had authority to determine what was fair, just, and proper utilizing its own ideas of what is just and fair. To interpret the decision as meaning that the auto club is required to be governed not by what the Corporations Code allows, but by what a judge of a superior court thinks is "fair and just" is totally unfair and without precedent. No other corporation is required in addition to making bylaws that are within the keeping and confines of the Corporations Code, to also submit its bylaws to a censor or pre-inspector and receive therefrom his imprimatur, before it may adopt such bylaws and operate thereunder. Because the statement of the appellate court in *Braude* v. *Havenner, supra*, seems to assume and to confer upon the trial court an equitable jurisdiction upon a court of law to an extent and in a manner not heretofore clearly recognized and because as a result it might be misconstrued to improperly grant to a superior court a "roving commission" it is necessary to view the language in the light of the case law upon which it relied to order the superior court to "retain equitable jurisdiction." We briefly review that case law.

*Lawrence* v. *I. N. Parlier Estate Co.*, 15 Cal.2d 220 [100 P.2d 765], involved the right of pledgeholders to vote. The court determined the rights of the individual pledgeholder on the basis of *contract law* and general fiduciary duties, and the right of a corporate pledgeholder on the basis of case law and the *statutory* provision governing pledgeholder voting. (*Id.* at pp. 229-231.) *Haynes* v. *Annandale Golf Club*, 4 Cal.2d 28 [47 P.2d 470, 99 A.L.R. 1439], involved the validity of a bylaw which required the consent of the corporation when members wished to resign. The court held that this bylaw was ". . . obnoxious to the spirit as well as

to the clear meaning of the *statute.*" (Italics added.) (*Id.* at p. 30.) *People's Bank* v. *Superior Court,* 104 Cal. 649 [38 P. 452], involved a bylaw which required proxyholders to be stockholders. The court held that this bylaw restricted a right granted by *statute,* and was therefore invalid. (*Id.* at p. 652.) *Columbia Engineering Co.* v. *Joiner,* 231 Cal.App.2d 837 [42 Cal.Rptr. 241], involved the validity of votes cast by shareholders whose stock had been issued in violation of a permit from the Commissioner of Corporations. The court held that these shares could not be voted because they were void, citing Corporations Code section 26100, and the cases which apply that section. (*Id.,* at pp. 853-854.) *Burnett* v. *Banks,* 130 Cal.App.2d 631 [279 P.2d 579], dealt with directors perpetuating themselves in office by refusing to call an annual meeting. The court held that it had a right under section 2238 to order an election because sections 2200 and 2201 contemplate "that there should be annual election of directors." (*Id.* at p. 635.)

All of the California cases cited by the Court of Appeal are primarily guided by and place reliance on the statutory scheme governing corporations. This is typical of the cases decided under Corporations Code sections 2236-2238. In none of the cases relied upon by the appellate court is there a decision that a court may impose its own idea of what is "fair or unfair" in a bylaw. The court must measure the bylaws against statutory or constitutionally permissible administrative requirements or determine if valid bylaws have been misused because of improper and unfair *conduct* of officers, directors, or shareholders or in direct violation of law.

At bench the present bylaws are entirely legal and fair. The fact that plaintiff or some other dissident minority member of the club is personally unable to easily and on an equal financial basis oppose the board of directors is no reason to employ the Robin Hood theory of equalizing his minority position with a position of the majority, and for that purpose to say that the bylaws are therefore unfair. The present bylaws comply with the requirements of the Corporations Code. They in no way offend any statute, rule, or administrative order of the Corporations Commissioner. No evidence of misuse of any bylaw or rule of the corporation has been presented. There is not a hint of personal wrongdoing by any director and none is claimed. To the contrary, the record shows that the past and present directors are persons of high ethical standards and dedicated to and performing much public service. They have not individually or collectively attempted to "perpetuate themselves" in office, or to use the proxies or bylaws "solely" to do so.

I would add to the order and judgment of this court as set forth in the majority opinion, that the trial court in addition to finding that the use of proxies is proper, find that the present bylaws are just and proper and to terminate its jurisdiction, having performed the directed task of determining that the old bylaws were improper and that new bylaws have been adopted by the club, and that there has been no misuse of the bylaws or any other wrongdoing by any individual director.

A petition for a rehearing was denied March 30, 1978, and the petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied May 1, 1978. Mosk, J., was of the opinion that the petition should be granted.